# STATE EX REL. JAMISON v. FORSYTH, STATE AUDITOR.

## (No. 751.)

STATUTES—APPROVAL BY GOVERNOR—APPROPRIATIONS—GENERAL APPROPRIATION BILL—POWER OF GOVERNOR TO DISAPPROVE PART AND APPROVE PART OF A DISTINCT ITEM.

1. Without deciding whether the governor is authorized to disapprove part and approve part of a distinct item in a general appropriation bill, under Section 9 of Article IV of the Constitution conferring power upon him to disapprove of any item or items or part or parts of any bill making appropriations of money embracing distinct items, *held,* as to a bill presented to the governor on the last day of the session of the legislature and not acted upon by him until after adjournment, that if he has such power his disapproval of part only of the amount of a distinct item would leave the remainder appropriated, and if such power is not conferred his act in disapproving a part and approving a part of the item would be invalid and a nullity, and the entire amount of such item would be appropriated and available for the purpose declared by the bill, since under Section 8 of Article IV of the Constitution, to prevent a bill so presented and not acted upon until after adjournment, or any of the items thereof, from becoming a law, the Governor would be required to expressly disapprove the same by filing the bill with his objections in the office of the Secretary of State within fifteen days after the adjournment of the legislature.

2. The provision of Section 8 of Article IV of the Constitution that any bill not returned by the governor within three days (Sundays excepted) after its presentation to him shall be a law, unless the legislature by its adjournment prevent its return, in which case it shall be a law, unless he shall file the same with his objections in the office of the Secretary of State within fifteen days after such adjournment, applies to the general appropriation bill as well as to other bills.

3. Where the general appropriation bill contained among other distinct items of appropriation to pay the necessary contingent expenses of state and district officers, employes, boards and commissions, an item of $15,000 for the office of state geologist, and said bill was presented to the governor on the last day of the session of the legislature,

and within fifteen days thereafter the governor signed the bill, stating above his signature: "This act is approved save and except the items or parts of items specially noted herewith as being disapproved and as shown by accompanying communication. * * * See also notations on margin"; and on the margin of the item appropriated for said office was the following notation: "$10,000 of item approved. $5,000 of item disapproved"; and in the accompanying communication it was stated by the governor that he approved of so much of the item as appropriates $10,000, and withheld his approval from $5,000, leaving the appropriation $10,000; said bill so signed and with the accompanying communication being filed with the Secretary of State within said period; *held,* that the action of the governor as to said item of appropriation was not an objection to or a disapproval of the entire item, and if the authority is not conferred upon him to disapprove a distinct item in part and approve it in part, his act in attempting to do so would be a nullity, and ineffectual for the purpose intended, or for any other purpose; that at least the sum of $10,000 was appropriated for said office, and that being sufficient to pay the claim for which mandamus was sought against the auditor, which was conceded to be the first claim, if not the only one, presented for allowance out of said appropriation, it would be unnecessary to decide whether said action of the governor lawfully reduced the appropriation to the amount approved.

4. By "objections" or "disapproval," as those terms are employed in the Constitution with reference to the veto power of the governor, is meant objections or disapproval within the authority of the governor, and expressed in the manner provided by the Constitution.

5. Under Section 8 of Article IV of the Constitution, providing that a bill received by the governor too late to be returned to the legislature within a specified time will become a law unless disapproved by the governor within the period limited for that purpose after adjournment, an unauthorized disapproval will not defeat the bill.

6. Where an affirmative approval of the governor is not required to a general appropriation bill becoming a law, but the bill or the items contained therein will become law unless disapproved, an unauthorized disapproval will be ineffectual. (Beard, J., dissenting.)

[Decided June 16, 1913.]                    (133 Pac. 521.)

ORIGINAL proceeding in mandamus.

The action was brought in the name of the state on the relation of Claude E. Jamison against Robert B. Forsyth, State Auditor, to require the payment of a claim of the relator out of an alleged existing appropriation for the office of state geologist. The case was heard upon a demurrer to the petition, it being conceded that all facts were fully and correctly set forth therein. The material facts are stated in the opinion.

*D. A. Preston,* Attorney General, for respondent, in support of demurrer, cited Commonwealth v. Barnett, 199 Pa. 161; Fulmore v. Lane, (Tex.) 140 S. W. 405; State v. Holder, (Miss.) 23 So. 643; Porter v. Hughes, (Ariz.) 32 Pac. 165; Oklahoma v. Trapp, 113 Pac. 910, 28 Okl. 83.

*C. L. Rigdon,* for relator, *contra.*

POTTER, JUSTICE.

The original jurisdiction of this court is invoked in this case. It is an action seeking a peremptory writ of mandamus requiring the defendant as State Auditor to allow the bill and voucher of the relator for the sum of five dollars and issue to the relator a warrant for that amount upon the State Treasurer in payment of said bill. The case has been presented upon a demurrer to the petition and it is conceded that all the facts have been fully and correctly set forth in the petition. The question involved is the effect of the action of the Governor in approving a part of an item in the general appropriation bill passed at the recent session of the Legislature, and disapproving the remainder of that item.

The facts are, as set forth in the petition, that the relator, Claude E. Jamison, is the duly and regularly appointed, qualified and acting State Geologist of the State of Wyoming, and was such on the first day of April, 1913. That biennially there is appropriated by the legislature out of funds in the state treasury not otherwise appropriated a

certain sum·of money to pay the necessary contingent expenses of the State Geologist. That on the last day of the session, viz.: February 22, 1913, the Twelfth Legislature passed an act making appropriations of money embracing distinct items, entitled: "An Act making appropriations for salaries and contingent expenses of State and District ofcers and employees, and the various State Boards and Commissions, for the two years ending March 31st, 1915, including * * * ." That among the distinct items of appropriation enumerated in Section 3 in said act to pay the necessary contingent expenses of State and District officers and employees, and the various State Boards and .Commissions from March 31, 1913, to and including March 31, 1915, is one which reads as follows: "For the office of State Geologist, fifteen thousand dollars." That on the 8th day of March the Governor signed the said act and approved the said item of appropriation for the contingent expenses of the office of State Geologist to the extent of ten thousand dollars, and disapproved of five thousand dollars thereof in words and figures to-wit: "This act is approved save and except the items or parts of items specially noted herewith as being disapproved and as shown by accompanying communication. March 8, 1913, 6 p. m. See also notations on margins. Joseph M. Carey, Governor." That on the margin of the item "For the office of State Geologist, fifteen thousand dollars," is the following notation: "$10,000 of item approved, $5,000 of item disapproved. J. M. C., Governor." That the accompanying communication of the Governor appended to said act and explaining .his action thereon is in words and figures as follows (omitting everything not pertaining to this particular item of appropriation) :

"March 8, 1913.

Hon. Frank L. Houx,
    Secretary of State,
        Cheyenne, Wyo.

Sir :—I herewith file with you Enrolled Act No. 93 (O. H. B. No. 266), House of Representatives, entitled: 'An

Act making appropriation for salaries and contingent expenses * * * ' etc., etc., said act being what is known as the General Appropriation Act.  I have approved this act except where specifically noted hereinafter. . * * * Section 3, the paragraph reading 'For the office of State Geologist, fifteen thousand dollars.'  I approve of so much of this item as appropriates $10,000, and withhold my approval from $5,000, leaving the appropriation $10,000.  The State Geologist's office had an appropriation of $5,000 for the biennial period just passing.  I believe double this appropriation ought to be more than sufficient to carry on the work of his office for the next two years.  * * *

Very truly yours<br>JOSEPH M. CAREY,<br>Governor."

That on the 1st day of April, 1913, the relator presented to the defendant as State Auditor his bill and voucher in due form against the state for the sum of $5, an amount due and payable as an expenditure necessarily made by the relator in the performance of the duties imposed by law upon him as State Geologist.  That the Auditor, questioning the legality of the said item of appropriation for the contingent expenses of the office of the State Geologist, has refused a warrant for the said bill and voucher, or any other amount. The petition, after setting forth the said facts, alleges : "That in and by said Section 3 of said Act the sum of ten thousand dollars, or so much thereof as may be necessary, is appropriated by law to pay the necessary contingent expenses of the State Geologist from March 31st, 1913, to and including March 31st, 1915, and so said petitioner represents that an amount of money sufficient to pay said expenditure due to said relator as set forth in said bill and voucher is in the treasury of the state, and has been duly and regularly appropriated by law."

As above suggested, the question presented by the demurrer is whether, as a result of the Governor's approval of part and disapproval of part of the item appropriated

for the contingent expenses of the State Geologist's office, there is an appropriation of any amount for that purpose.

Counsel for relator does not contend that the Governor is without authority to disapprove a part only of a distinct item in a general appropriation bill and approve the remainder of such item, but has assumed that the Governor possesses such authority, insisting, however, that whether the Governor is vested with that authority or not, at least the sum of $10,000 remains appropriated for the payment of the contingent expenses of the Geologist's office. The position of the Auditor, as explained by the Attorney General, is that the authority of the Governor to disapprove of a part of an item in an appropriation bill containing distinct items has been doubted, leaving the result of such action on has part also in doubt, that is to say, whether it has resulted in destroying the entire appropriation for said contingent expenses of the Geologist's office or in an appropriation by law of the amount as reduced by the Governor or as passed by the legislature.

The provisions of the Constitution applicable to the question thus submitted are as follows:

Art. III, Sec. 24. "No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

Art. III, Sec. 34. "The general appropriation bills shall embrace nothing but appropriations for the ordinary expenses of the legislative, executive and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

Art. III, Sec. 35. "Except for interest on public debt, money shall be paid out of the treasury only on appropriations made by the legislature, and in no case otherwise

than upon warrant drawn by the proper officer in pursuance of law."

Art. IV, Sec. 8.   "Every bill which has passed the legislature shall, before it becomes a law, be presented to the governor.   If he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon the journal and proceed to reconsider it.   If, after such reconsideration, two-thirds of the members elected agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if it be approved by two-thirds of the members elected, it shall become a law; but in all such cases the vote of both houses shall be determined by yeas and nays, and the names of the members voting for and against the bill shall be entered upon the journal of each house respectively. If any bill is not returned by the governor within three days (Sundays excepted) after its presentation to him, the same shall be a law, unless the legislature by its adjournment, prevent its return, in which case it shall be a law, unless he shall file the same with his objections in the office of the secretary of state within fifteen days after such adojurnment."

Art. IV, Sec. 9.   "The governor shall have power to disapprove of any item or items or part or parts of any bill making appropriations of money or property embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items and part or parts disapproved shall be void unless enacted in the following manner:   If the legislature be in session he shall transmit to the house in which the bill originated a copy of the item or items or part or parts thereof disapproved, together with his objections thereto, and the items or parts objected to shall be separately reconsidered, and each item or part shall then take the same course as is prescribed for the passage of bills over the executive veto."

A provision similar to that contained in Section 9 of Art. IV, allowing the Governor to disapprove of any item or part of a bill appropriating money containing distinct items is found in the constitution of many of the states. (See note to the case of Commonwealth v. Barnett, 55 L. R. A. 882.) But the authority under such provision to disapprove of part only of an item and approve the remainder of the item does not seem to have been positively decided except in one case, where it was held, one justice dissenting, that the power to so act was conferred upon the governor, so that he could by approving a part and disapproving a part of an item, reduce the amount thereby appropriated for a specific purpose. (Commonwealth v. Barnett, *supra,* officially reported in 199 Pa. St. 161, 48 Atl. 976, 55 L. R. A. 882.) Expressions to the contrary are, however, to be found in at least two cases, the right to so reduce an item being distinctly denied in the opinion of one of the justices in the Texas case of Fulmore v. Lane, 140 S. W. 405, 423, although the other justices concurring in the disposition made of the case do not seem to have rested their conclusion upon that ground.

It appeared in the Pennsylvania case that the general appropriation act, containing distinct items of appropriation, embraced one item of $11,000,000 for the support of the public schools, and that the governor approved such item of appropriation to the extent of $10,000,000 and disapproved $1,000,000 thereof. The veto message explaining the reasons for the disapproval of the item in part concluded as follows: "The authority of the governor to disapprove part of an item is doubted, but several of my predecessors in office have established a precedent by withholding their approval from a part of an item and approving other parts of the same item. Following these precedents, and believing that the authority which confers the right to approve the whole of an item necessarily includes the power to approve part of the same item, I, therefore, approve of so much of this item which appropriates $5,000,000 annually, making

$10,000,000 for the two years beginning June 1, 1899, and withhold my approval from $500,000 annuallly, making $1,000.000 for the two school years beginning June 1, 1899." The provisions of the Constitution of Pennsylvania which were considered in the case cited, are very much like our own. It provides that where a bill which has been presented to the governor cannot be returned to the house in which it originated with the governor's objections thereto because of the adjournment of the legislature, it shall become a law unless the governor shall file the same with his objections in the office of the secretary of the Commonwealth, and give notice thereof by public proclamation within thirty days after such adjournment. The governor is also given "power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items," and it is declared in the same section that "the part or parts of the bill approved shall be the law, and the item or items of appropriation disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills over the executive veto."

The reasons given by the court, in the opinion delivered by Mr. Justice Mitchell, for declaring the power conferred upon the governor to disapprove of part and approve part of the same item are substantially as follows: That the disapproval by the governor, commonly known as a veto, is essentially a legislative act; and that the fact that the governor is limited to negation or concurrence and cannot affirmatively initiate or amend legislation, does not take away the legislative character of his act. That the presumption is that within its limited sphere of negation the power applies to every branch and subject of the bill to which the legislative powers of the two houses apply. That the veto power as originally confined to approval or disapproval of an entire bill as presented was found to be inadequate to the accomplishment of its full purpose, and that the legislature in framing and passing a bill had full control over every subject and every provision that it contained, and the governor as a co-

ordinate branch of the law-making power, was entitled to at least a negative of the same extent. That by joining a number of different subjects in one bill, the governor was compelled to accept some enactments that he could not approve, or defeat the whole, including some that he thought desirable or even necessary. That such bills, popularly called "omnibus" bills, became an evil which the later changes in the constitution were intended to remedy. That omnibus bills were done away with by the amendment to the constitution that no bill shall contain more than one subject which shall be clearly expressed in its title, but excepting appropriation bills, as to which it seems to be convenient or necessary that distinct items may be contained therein, although the various items may be so diverse as to come within the description of different subjects. That the constitution meets that difficulty by providing that the general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the commonwealth, interest on the public debt, and for public schools; and that all other appropriations shall be made by separate bills each embracing but one subject, and granting to the governor the power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items. That such provisions distinctly recognize the legislative character of the governor's part in the passage of bills, and show a purpose to increase the power and scope of his veto. That "item" and "part" are used interchangeably in the same sense in the section granting the power to disapprove of any item or items of the bill, and declaring that the part or parts of the bill approved shall be law, and the item or items disapproved shall be void; that "if any special or different meaning was attached to the word 'item' the natural mode of expression would have been to use that word throughout the section, but for the sake of euphony and to avoid the repetition of the same word three times in the same sentence, the draughtsman used the word 'parts' as an evident synonym."

That in ordinary bills the single subject is a unit which admits of approval or disapproval as a whole, without serious inconvenience, even though some of the details may not be acceptable; but that every appropriation, though it be for a single purpose, "necessarily presents two considerations almost equally material, viz.: the subject and the amount. The subject may be approved on its merits, and yet the amount disapproved as out of proportion to the requirements of the case, or as beyond the prudent use of the state's income." That the legislature has full control of the appropriation in both its aspects, and the plain intent of the constitution was to give the governor the same control as to disapproval, over each subject and each amount; that a contrary construction would destroy the usefulness of the constitutional provision; and that "if the legislature by putting purpose, subject and amount inseparably together and calling them an item, can coerce the governor to approve the whole or none, then the old evil is revived which this section was intended to destroy." That the practice adopted by the governor was not new in the state, but that in a number of instances parts of appropriation bills had been vetoed by other governors. As to that practice and its effects the court say: "Appellant has argued at some length that none of these instances was actually like the present, and as to the details that much may be conceded. But they all rest on the same principle, the right of the governor in the exercise of his independent legislative judgment to approve an appropriation in part, by reducing the amount fixed by the legislature. As to that principle the executive practice must be considered as settled. While the executive interpretation of his own powers is not binding on the judiciary, it has always been considered as persuasive and entitled to great respect. And where, as in this instance, the practice has been frequent and acquiesced in without objection for a number of years, it should be very clearly shown to be unconstitutional to justify the courts in declaring against it."

The majority of the court appear to have entertained the view that if the constitution should be construed as not

authorizing the disapproval of a part of the item, then there would be no appropriation at all for the support of public schools, and thereby the express provision of the constitution would be defeated or violated which requires that the legislature "shall appropriate at least one million dollars each year" for that purpose, for it is said in the opinion of the court, after referring to that constitutional provision: "The appellants have entirely overlooked or misconceived the effect of a partial veto such as was given in the present case. If the disapproval of part and the approval of the rest were not valid acts, then there was no appropriation at all, and the money already received by the schools was illegally paid. For there was no executive approval of an appropriation of $11,000,000." And we suppose that to have been one of the grounds, locally applicable to that state, upon which the provision for the disapproval of an item was construed to authorize the disapproval of part of an item.

Mr. Justice Mestrezat, in a dissenting opinion, referred to the reason for the adoption of the section in question as follows: "Prior to the adoption of the present constitution, the governor was compelled to approve or disapprove the entire appropriation bill, and could not give his consent to some of the items, and withhold it from others, embraced in the bill. This frequently led to the executive being coerced to approve many unwise and improper appropriations, as public necessity would not permit him to disapprove the whole bill. To remedy this evil, the veto power was extended by Section 16 of Article IV so that he might strike out such items of an appropriation as were improper and permit the others to become effective. The section must be construed in the light of the purpose for which it was adopted, and the people did not intend to go further than was necessary to effect that object when they made it a part of the constitution. Whatever veto authority the governor possesses, be it legislative or executive in its character, is, as has been said, conferred upon him by the constitution, and when he claims the right to exercise this power, it is

incumbent upon him to show that the people have clearly delegated it to him. The grant of the power must be strictly construed."

Discussing the meaning of the section it was said in the dissenting opinion: "Section 16 confines the use of the veto power to bills making appropriations of money containing more than one item. Such bills are the only ones that may contain 'more than one subject.' As the school appropriation is, by the constitution, required to be embraced in the general appropriation bill, it is 'one subject' of the many that the bill may contain. This could not be reached by the general veto power conferred on the governor. * * * That will authorize him to veto the whole bill, but not a single item of the bill. He must, therefore, resort to the power given him in Section 16. The bill of 1899 'embraces distinct items,' and therefore this provision of the constitution applies to it. The governor could under this authority disapprove of 'any item or items' of the bill. By reference to the act it appears that the appropriations made for the several departments of the government, except that for the support of the public schools, are each divided into, and composed of, several items. The executive may, therefore, in his discretion, disapprove one or more of the items in each or all of the several appropriations. The part or parts of the bill composed of entire items, and not the part or parts of entire items, he may approve and thus make them the law. In other words, the executive has authority to select such of the many items contained in a general appropriation bill as he may desire and disapprove them, and the parts of the bill embracing separate and entire items, which he approves, shall be the law. Item, as used in the constitutional provision, signifies a specific sum appropriated to a specific purpose, and not a fractional part of said sum thus appropriated. Such is the plain language of the instrument, and in its interpretation there is no necessity for resorting to any technical rules of construction or to the exposition of it by former executives. * * * The executive, how-

ever, maintains that his authority to veto is not confined to 'any item or items' of the bill, but that he may disapprove a 'part of an item,' and such is the argument here by the attorney general for the respondent. This, as we have seen, is not the plain, obvious meaning of the language used in the instrument itself. To sustain the position it is argued for the respondent that, unless his construction be given the section, and the executive be thereby permitted to annul its requirements, the governor cannot obey the 4th section of Article IX and keep the appropriation within the revenues of the state. This interpretation may appeal strongly to the lay mind and convince the over-burdened taxpayer that the executive is enforcing the constitution by violating it, but it will find no support in the well established canons of constitutional construction. * * * But is such power necessary to prevent the state from becoming involved beyond its revenues? Clearly not. The executive has the authority to veto the whole of any item of, or an entire bill making an appropriation. Aside from the school fund, he could, therefore have destroyed the entire appropriations if he had so desired and the emergency had required it. But it may be suggested that this would have stopped the wheels of government, and would have been a violation of the constitution. Concede it. The executive would then have been placed in a position of violating another part of the constitution instead of infringing Article IV, Section 16. The difference is only as to what part of the instrument shall be violated, and in bestowing upon the governor the authority to determine which part of the organic law he will enforce and what part he will annul. Such a construction is not in consonance with any rule in the books. It is contended by the respondent that because the governor may disapprove of a distinct item of an appropriation bill, he may reduce that item to any sum he may desire to approve. The practical operation of such a construction of his veto power would be to annul Section 1 of Article II of the constitution which provides: 'The legislative power of this common-

wealth shall be vested in a general assembly.' It is well known that most of the appropriation bills are passed upon by the governor after the legislature has adjourned. * * * He could, therefore, under the authority claimed by respondent, determine the amount of every appropriation by reducing the various items embraced in general appropriation bills. This is solely a legislative function under the constitution which in no form is granted to him in that instrument. It places the legislature in the position of being able to fix the maximum of an appropriation to any object, subject, however, to the will of the governor whether he will permit the members of that body to exercise their judgment as to the amount of the item appropriated. Such was clearly not the intention of the people who adopted the constitution. The executive may, for any reason deemed sufficient by him, deprive the beneficiary of the item of appropriation, unless subsequently passed over his veto, but he is not empowered to take from the legislature its constitutional prerogative of fixing the amount of the item to be appropriated. That is purely a legislative and not an executive function under the constitution of Pennsylvania."

Referring to the proposition that former governors had interpreted the constitution as conferring authority to veto a part of a single item of an appropriation, the dissenting justice further said: "When the language is plain and the intent of the provision is clearly deducible, extrinsic circumstances and practical construction are not permitted to have any force in its interpretation: (Story on Const. Sec. 407; Cooley's Const. Lim., 84.) The rule, therefore, can not be invoked to aid in the construction of this section of the constitution. I think the section in question is not ambiguous nor susceptible of two interpretations, and hence its language is the sole guide to its construction. However, an examination of the veto messages referred to in the respondent's brief shows that all of them do not support his construction of the constitutional provision in question. Some have no application by reason of dissimilar facts, others suggest ne-

cessity as the basis of their action and interpretation, while others distinctly recognize the lack of authority in the executive to disapprove of a part of an item. Such construction is worthless as a precedent to a court of justice in the interpretation of a constitutional provision."

We have referred to and quoted from the opinions in the Pennsylvania case so fully for the reason that it is the only one in which the question as to the authority of the executive to veto a part of a distinct item in a general appropriation bill has been directly decided by any court of last resort, and for the further reason that the opinions forcibly present the arguments for and against a construction of the constitutional provision so as to include such authority, and the grounds upon which the power was maintained and upheld.

In the Texas case of Fulmore v. Lane, *supra,* Mr. Justice Ramsey, dissenting in part but concurring in the result, said : "An effort was made in argument to sustain the governor on the theory that under the constitution he has the right to reduce any part of an item. To this contention and claim we can never give our assent. If this were conceded, then it would be within the power of the governor to reduce any appropriation, where the amount sought to be appropriated was not fixed in the constitution. It would authorize, in respect to the health department, to the comptroller's department, our educational institutions, our eleemosynary institutions, and every department of the state government, that the governor, when the legislature had properly passed on the matter and probably adjourned, might reduce and tear down the appropriations made for the administration of the affairs of the state in such a way as to beggar and bankrupt all of them and to deny the representatives of the people of the state, the legislature duly assembled, any authority or participation whatever in the money mills of the commonwealth. Such a proposition involves such intolerable tyranny and hurtful usurpation as not to be entertained for one moment. Nor, it should be said, was the action of the

governor based on this principle, nor does he seem to entertain this belief."

The provision of the constitution of Texas, considered in the case cited, as quoted in the opinion of Mr. Justice Dibrell is as follows: "If any bill presented to the governor contains several items of appropriation, he may object to one or more of such items and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect. If the legislature be in session, he shall transmit to the house in which the bill originated a copy of such statement, and the items objected to shall be separately considered. If, on reconsideration, one or more of such items be approved by two-thirds of the members present of each house, the same shall be a part of the law, notwithstanding the objection of the governor." After quoting that provision Judge Dibrell proceeds to say: "As provided for in the foregoing section of the constitution, where any bill providing for several items of appropriation is presented to the governor for his approval, he may object to one or more of such items, which items shall not take effect, unless passed by both houses by two-thirds of the members thereof. If the appropriation for the attorney general's department contained one item of appropriation only, then the governor's veto struck out the whole of the appropriation; but, if the appropriation contained more than one item, the veto struck out only a part of such appropriation. It will therefore be necessary to determine, as a matter of law, whether the appropriation contains one or more items. Having determined that issue, we will then proceed to determine whether the veto of the governor struck out the whole or a part of the appropriation."

The case involved an objection by the governor to an appropriation made for the attorney general's department for two years, viz.: the sum of $83,160, or, as stated in the appropriation act, $41,580 for each of the two years. The governor vetoed the lump sum of $83,160 appropriated for

the two years, and also the appropriation of one-half of that sum for the second year, leaving or intending to leave untouched by the veto the sum of $41,580 for the first year. In the veto message the governor stated that the amount which he had not objected to would be subject to the use of the attorney general for the two fiscal years named. It was held by a majority of the court that the appropriation for the attorney general's department, notwithstanding the mention in the act of the aggregate appropriation for the two years contained two distinct items, viz.: $41,580 for each year, authorizing the governor to disapprove of one of them as a separate and distinct item, and allowing the other item to remain appropriated; and that the amount so appropriated was sufficient for the payment of the amount alleged to be due, for which a writ of mandamus was asked against the comptroller.

It is provided in the constitution of Mississippi as follows: "The governor may veto parts of any appropriation bill, and approve parts of the same, and the portions approved shall be law." Referring to that provision it was said in State v. Holder, 76 Miss. 158, 23 So. 643, that it relates to general appropriation bills, or those containing several items of distinct appropriations, and that it applies to such as are made up of parts and consist of portions separable from each other as appropriations; and, further, that it was framed with a view of guarding against the evils of omnibus appropriation bills, securing unrighteous support from diverse interests, and to enable the governor to approve and make law some appropriations, and to put others to the test of securing a two-thirds vote of the legislature as the condition of becoming law. And the true meaning of the section was said to be that "an appropriation bill made up of several parts—that is, distinct appropriations, different, separable, each complete without the others, which may be taken from the bill without affecting the others, which may be separated into different parts complete in themselves—may be approved and become law in accordance with the legislative

will, while others of like character may be disapproved and put before the legislature again, dissociated from the other appropriations." Again, in the same connection, the court said: "To allow a single bill entire, inseparable, relating to one thing, containing several provisions, all complementary of each other and constituting one whole, to be picked to pieces and some of the pieces approved and others vetoed, is to divide the indivisible, to make one of several, to distort and pervert legislative action, and by veto, make a two-thirds vote necessary to preserve what a majority passed allowable as to the entire bill, but inapplicable to a unit composed of diverse complementary parts, the whole passed because of each." The particular question as to the power to disapprove of a part of a distinct item of appropriation and approve the remainder was not presented in that case, but it involved the disapproval of certain provisions in a bill appropriating money for a College, to be complied with as conditions before the money appropriated would become available for some of the purposes for which the appropriation was made, and such disapproval was held not to be authorized by the constitutional provision above quoted. But the court's explanation of the true meaning of the provision seems to conflict with the decision in the Pennsylvania case construing words of similar import, and might be held, we think, to deny the power to split a distinct item by disapproving a part of it, for a part of the item would 'not be "different, separable," and "complete"  *   *   * "which could be taken from the bill without affecting" any other part.

It will thus be observed that there is not a concurrence of judicial opinion respecting the power of the governor to disapprove part of an item under a constitutional provision authorizing him to disapprove an item or items, or part or parts, of an act appropriating money. Some of the grounds of the decision in the Pennsylvania case would not be applicable here. We do not have the practice of former executives showing an interpretation of the constitution favoring the right to disapprove part of an item, but, so far as we

are advised, the practice has been the reverse of that, and
it has not been suggested that any executive has heretofore
assumed the power of reducing an item by approving a part
and disapproving a part thereof.   Not only is there a con-
flict in the authorities respecting the interpretation of such
a constitutional provision, but judicial opinion differs con-
cerning the effect, as an aid to interpretation, of the former
practice of executives, no matter how long continued, in
assuming and exercising a veto power, when the right is
once questioned.   That was considered in the case of May v.
Topping, 65 W. Va. 656, 64 S. E. 848, where it was held,
under the constitution of West Virginia, that after the
legislature has adjourned the governor is without authority
to disapprove of an appropriation bill, or of items therein,
but must so act, if at all, before adjournment, and communi-
cate his disapproval, with his reasons therefor, to the house
in which the bill originated.   Answering the argument that
it had been the custom to approve appropriation bills, or to
disapprove some item therein, within five days after an ad-
journment of the legislature, and that such custom had never
been questioned, the court said: "Such custom, if it has ex-
isted as alleged, has been directly contrary to the constitu-
tional provision.   No affirmative approval of a general ap-
propriation bill is required, and no disapproval of such
bill, or any item therein, is effective, if expressed after ad-
journment.   The rule of contemporaneous or practical con-
struction is sought to be invoked.   We are cited to Lewis's
Sutherland on Statutory Construction, Sec. 472 *et seq.* This
celebrated authority does not justify the position, nor does
any authority, in this case.   The rule applies only where
there is ambiguity and doubt.   *   *   *   The rule cannot
be applied to overthrow an unambiguous mandate of
the law.   *   *   *   It was reasonably supposed when
these provisions were adopted that they would be fairly
dealt with, appropriately and usefully applied, and
quite as fairly, appropriately and usefully interpreted
by those to whom direction is given thereby.   That

the section has not hitherto received such interpretation is no reason why it should not in the future. "Two wrongs cannot make a right.'" Again, the statement in the court's opinion in the Pennsylvania case to the effect that if the acts of the governor in disapproving a part and approving the rest of the item were not valid, then they destroyed the entire appropriation, is contrary to the other decisions and judicial expressions on the subject, where an absolute approval is not essential to the bill becoming a law.

So far, therefore, as a determination of the right of the governor to disapprove part of a distinct item may .depend upon authorities, the question appears to be at least a doubtful one. But the conclusion we have reached in this case renders it unnecessary to determine that matter, and, hence, we ought not to assume the delicate responsibility of deciding whether the governor, in this instance, has or has not acted, or attempted to act, in excess of the authority conferred by the constitution. It is clear that if the governor possesses the power, then there is at least the sum of $10,000 appropriated for the contingent expenses of the office of the State Geologist for the two years beginning April 1, 1913, and ending March 31, 1915, and we understand it to be conceded that the expenditure here involved is the first, if not the only one, which has been presented to the auditor for allowance and the issuance of a warrant. And we think it equally clear that if the power is not conferred upon the governor to thus disapprove of a part of an item and approve a part, the action of the governor would be invalid and a nullity, and the entire amount of the appropriation as passed by the legislature for such contingent expenses would be appropriated and available. Hence in either case it would be the duty of the respondent, as state auditor, to allow the bill of the relator, if otherwise proper and regular, and issue a warrant upon the treasurer for the payment thereof.

The appropriation bill in question might have become a law without the affirmative approval of the governor, under the provision found in Section 8 of Article IV, that any bill

not returned by the governor within three days (Sundays excepted) after its presentation to him shall be a law, unless the legislature, by its adjournment, prevent its return, in which case it shall be a law, unless he shall file the same with his objections in the office of the secretary of state within fifteen days after such adjournment. The bill was presented to the governor on the last day of the session, and to prevent it, or any of the items therein contained, from becoming law, he would be required to expressly disapprove the same in the manner provided by the constitution, viz.: by filing the bill with his objections in the office of the secretary of state within said period. Any item not so disapproved, therefore, became part of the law. We think it clear that the above mentioned provision of Section 8 applies as well to the general appropriation bill as to other bills, for the section provides that *"every bill* which has passed the legislature" shall, before it becomes a law, be presented to the governor; and the latter part of the section referring to "any bill" not returned by the governor, must be given the same inclusive effect, for it cannot be doubted that it refers to and is intended to include every bill which is required to be presented to the governor. It is evident that the governor did not intend to veto or disapprove of the entire item of the appropriation made for the contingent expenses of the office of the State Geologist, and that he did not, by his indorsement upon the bill, or his communication appended to it, express a disapproval of the entire item. Over his official signature attached to the bill it is stated: "This act is approved save and except the *item or parts of items* specially noted herewith as being disapproved and as shown by accompanying communication." Opposite and on the margin of the item appropriating the sum of $15,000 for the contingent expenses of the office of the State Geologist the following is noted: "$10,000 of item approved, $5,000 of item disapproved. J. M. C. Governor." And in the communication addressed to the secretary of state and appended to the enrolled act it is stated by the governor that he ap-

proves of so much of the item referring to the contingent expenses of the geologist's office "as appropriates $10,000," and withholds his approval from $5,000, "leaving the appropriation $10,000." The mere fact that he considered the amount of $15,000 appropriated by the act to be excessive, or beyond the needs of the office of the State Geologist for the ensuing two years, does not amount to a disapproval of the item. Notwithstanding that fact he might have approved the item, explaining, however, in his communication that he considered it to be excessive. We find it impossible to construe the action of the governor with reference to that item as an objection to or a disapproval of the entire item, but on the contrary, it seems to us, that to hold his act to amount to a disapproval of the entire item would distort his language used in explaining his approval and disapproval and in noting upon the margin of the item his approval of part and disapproval of part. Further, if he was without authority to thus split the amount appropriated by that item in the act, then to say that by doing so he has disapproved the entire item would be to give effect to an invalid act and permit it to accomplish the purpose of a disapproval, without which the appropriation would become law. If the authority to disapprove an item in part and approve it in part is not conferred upon the governor, his act in attempting to do so would be a nullity, and necessarily ineffectual for the purpose intended, or any other purpose, for, being unauthorized, it would be void, and entitled to no consideration whatever. The effect would be the same, necessarily, we think, as if no such partial disapproval, or other disapproval, had been attempted. Either the governor's signature to the bill would stand without any qualification as to such an item, or the item would have force as law without approval because not disapproved. By "objections" or "disapproval" is meant lawful objections or disapproval—objections or disapproval within the authority of the governor, and expressed in the manner provided by the organic law. By "objections" to a bill when returned to the house in which it originated, or

when filed with the secretary of state after adjournment, is meant an expression of disapproval. The word is used in the sense of disapproval. That the governor did not intend or propose to object to, disapprove of, or veto the entire item seems to us to be unquestionable. He stated, indeed, that he approved of the larger part of the amount appropriated for the purpose, and expressly confined his disapproval to a part only of the amount. If it be assumed that the power of such a disapproval is not conferred upon him, then it would be no disapproval at all. The principle thus stated, seems to us not only to be sound, but we believe it to be well settled by the authorities.

In the case of Porter v. Hughes, 4 Ariz. 1, 32 Pac. 165, a case cited perhaps more than any other upon this question, it appeared that an item in the general appropriation act appropriating money for "territorial salaries of the district judges, as provided by law," was attempted to be disapproved by the governor by stating in signing the act that the same was approved, "except as to sub-division 17 of Section 1, which applies to appropriations for salaries of judges of the District Court." And the veto was sustained by the body in which the act originated. The question considered in the case was whether said item became a law at the time the governor affixed his signature to the act, notwithstanding his attempt to except the item from his approval of the bill as a whole. The court said: "What is commonly known as the 'veto power' was conferred upon the governor of the Territory by the Act of Congress of July 19, 1876. By the terms of this act the governor, in exercising the power, is limited to one of the following courses of action: First, if he approve a bill, he shall sign it; second, if he shall not approve it he shall return it, together with his objections, to the house in which it originated; third, he may retain a bill presented to him for his approval until it becomes a law by the expiration of ten days after said presentation, provided the assembly shall not have adjourned *sine die* during the ten days, in which case it shall not become a law. By the

organic act referred to, whatever the governor may do in the premises has reference to a bill in its entirety, and not to any of its parts. A bill is approved as a whole. The signature of the governor affixed to the bill is the evidence of his approval. In the case of the act in question, it being admitted that the governor affixed his signature to the same, this action of the governor, being in full compliance with the organic act, must be taken, therefore, as an approval of the whole bill as passed by the assembly, and as presented to him for his official action. It becomes immaterial what the governor may have done thereafter in the way of adding his objections to any part of said bill, for he had already exercised the full measure of his power in respect thereto." The court held that the item in question was valid and that the plaintiff, one of the parties for whose benefit the appropriation was made, was entitled to a peremptory mandamus upon the auditor to issue a warrant for the amount so appropriated and at the time payable. The same comments might be made with reference to the item involved in this case should the governor be without authority to disapprove it in part, for each of the distinct items in the bill, as to approval and disapproval, by reason of Section 9 of Article IV, could be separately considered, the same as though each constituted a separate bill. More than that, under our constitution, the disapproval of part being unauthorized, it would be ineffective, and the item would become law, without the governor's signature approving the act or any part of it. In the dissenting opinion in Commonwealth v. Barnett, *supra*, after declaring the executive to have been without authority to disapprove a part of the item appropriated by the legislature for the support of the public schools, it was said: "The bill having been approved by the governor, and the exception therefrom of a part of the school fund item being void, the entire amount became effective for the purpose for which it was appropriated."

In May v. Topping, *supra*, wherein it was held that the governor was without authority to disapprove an item in an

appropriation bill after the adjournment of the legislature, as he had attempted to do, it was said that disapproval in any other form or manner than that authorized by the constitution would not affect an appropriation act or an item therein. And again, "No disapproval of such bill, or any item therein, is effective, if expressed after adjournment." And concluding, the court said: "It appearing that the governor did not disapprove the item * * *. within the time prescribed by the constitution, and in the manner therein directed, the writ will be awarded." The case was one for a peremptory mandamus to compel the certification of a copy of the act and to include in such copy the item which the governor had attempted to veto. It appears that the constitution permitted the governor in the case of a bill making appropriation of money, embracing distinct items, to disapprove the bill, or any item or appropriation therein, and it required him to communicate such disapproval with his reasons therefor to the house in which the bill originated, and that "all items not disapproved shall have the force and effect of law according to the original provisions of the bill," and that "any item or items so disapproved shall be void unless re-passed by a majority of each House according to the rules and limitations prescribed in the preceding section in reference to other bills." The court said that it was the action in communicating such disapproval, with the reasons therefor, to the house in which the bill originated, that consummates and effects a veto of the item, and that the communication of the governor's disapproval, with his reasons therefor, is the disapproval itself. Discussing the meaning of the words "so disapproved" in the provision that an item so disapproved shall be void unless re-passed, etc., the court say: "Clearly they relate not simply to disapproval in the mind of the governor, but to some act of disapproval, some manner of disapproval. That act or manner of disapproval, provided for just above those words, and to which 'so disapproved' clearly relates, is by communication with reasons to the house in which the bill originated." The same

principle was again announced in Woodall v. Darst, (W. Va.) 77, S. E. 264, the court saying, in conclusion: "The veto in the present case was ineffectual to defeat the passage of the special appropriation in favor of relator."

In the Texas case of Fulmore v. Lane, *supra,* it appeared that, following the statement in the act of the total amount appropriated for the attorney general's department for two years, and the amount appropriated for each year, was a paragraph referred to in the opinion as the "guidance clause" making certain provisions concerning the expenditure of the sum or sums appropriated. This paragraph or clause was stricken out by the governor and he stated in his communication to the secretary of state explaining his action upon the bill that he disapproved the said paragraph, giving the reasons therefor. It was held that the governor was without authority to veto that part of the bill which directed the method of the expenditure of the money appropriated, and further, that, since the disapproval was unauthorized, it was not effective for any purpose, and that the paragraph so attempted to be stricken out remained as a part of the act. In the opinion of Mr. Justice Dibrell it is said: "It follows conclusively that where the veto power is attempted to be exercised to object to a paragraph or portion of a bill other than an item or items, or to language qualifying an appropriation or directing the method of its uses, he exceeds the constitutional authority vested in him, and his objection to such paragraph, or portion of a bill, or in qualifying an appropriation, or directing the method of its use, becomes non-effective. So that we are constrained to hold that that portion of the veto message contained in sub-division 3 of the statement of objections appended to the appropriation bill and filed in the office of the secretary of state was unauthorized, and therefore non-effective, and the paragraph so attempted to be stricken out will remain as a part of the appropriation bill." In the opinion of Mr. Justice Ramsey, who stated his judgment to be that the appropriation in question consisted of a single item, and, therefore, beyond

executive veto, unless vetoed in its entirety, it was said that all of the justices had agreed that the "guidance clause" must remain. as a part of the law.

In the Mississippi case of State v. Holder, *supra,* it appeared that the governor had expressed his approval of that part of the bill which included the appropriation, but had disapproved part of the section declaring certain conditions upon the expenditure of the money. The constitution provided: "If any bill shall not be returned by the governor within five days (Sundays excepted) after it has been presented to him, it shall become a law in like manner as if he had signed it, unless the legislature, by adjournment, prevent its return, in which case it shall be a law unless sent back within three days after the beginning of the next session of the Legislature. No bill shall be approved when the Legislature is not in session." It was held that the bill in question was an entire thing, inseperable in its provisions and to be approved or disapproved as such, and not having been signed as a whole, was not made law by the partial and qualified approval which it received. It will be observed that by the constitutional provision above quoted a bill would not become a law when not signed by the Governor, and its return was prevented by adjournment, until there was an opportunity to return it within three days after the beginning of the next session of the Legislature, but that such a bill would become a law "unless sent back within three days after the beginning of the next session." Since, in order to make a bill a law immediately, it was necessary that it be lawfully approved, the court held that as the bill had not been approved as a whole it did not become a law even in part, and that "the bill, in legal contemplation, must be held to be yet in the hands of the Governor, and may become law unless sent back by him within three days after the beginning of the next session of the Legislature." As we understand the decision, therefore, the court held not only that the qualified approval was not an approval authorized by the constitution, but that the disapproval was not authorized or lawful, for

which reason the bill would become law unless sent back within three days after the beginning of the next legislative session. Applying that principle to the case in hand, it would follow under our constitution, which provides that a bill received too late to be returned to the Legislature within the specified time will become a law unless disapproved within the period limited for that purpose after adjournment, an unauthorized disapproval would not defeat the bill.

The same principle, or one controlled by the same reasons, was announced in Oklahoma in the case of Regents of the State University v. Trapp, Auditor, 28 Okl. 83, 113 Pac. 910. It appears from the opinion in that case that the constitution of Oklahoma provides that, "If any bill or resolution shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the Governor. No bill shall become a law after the final adjournment of the Legislature, unless approved by the Governor within fifteen days after such adjournment." And the court say: "By reason of that section no bill which is sent to the Governor less than five days before the adjournment of the Legislature can become a law without the approval of the Governor, unless passed over his veto; and it cannot become a law with his approval, unless approved by him within fifteen days after such adjournment." It appears also that the constitution contains a provision authorizing the Governor to disapprove any item contained in a bill making appropriations of money embracing distinct items. The bill there under consideration, in the first section thereof, appropriated a certain sum for the support and maintenance of the State University for the ensuing two years. In Section 2 the amount so appropriated was apportioned for the various purposes of the university. The Governor approved the bill except as to certain items contained in Section 2, each of which, with a single exception, he reduced. The court held that the bill did not embrace

distinct items of appropriation, but a single item, with direction how that item shall be expended, together with direction as to how other items of appropriation made by other acts of the Legislature shall be apportioned and expended; that, therefore, the bill did not come within the section permitting the Governor to disapprove of a distinct item in an appropriation bill; and that having approved the bill in part and disapproved it in part, without authority so to do, his sanction of the parts of the bill approved was ineffectual to give those parts the force of a law. There, an affirmative approval was essential to the bill becoming a law, and the approval being a qualified one, and unauthorized in that form, it was held not to amount to an approval at all within the meaning of the constitution, and not effectual for any purpose. If that be true, we think the same reasons require it to be held that where an affirmative approval is not required, but the bill or the items contained therein will become law unless disapproved, an unauthorized disapproval will be ineffectual. Conceding that where an approval is required to give the act force as law, words qualifying the approval, showing a purpose to approve it only in part, will nullify the approval and render it ineffectual, it does not, we think, reasonably follow that similar words qualifying an approval and showing a purpose to disapprove in part, will amount to a disapproval of the entire bill, or of an item in it affected by the attempted disapproval, where such partial disapproval is unauthorized by the constitution, and the bill or the particular item would become a law unless disapproved.

We conclude for the above reasons that there is at least $10,000 appropriated for the contingent expenses of the office of the State Geologist for the two years ending March 31, 1915, and a peremptory writ will be awarded requiring the allowance of the claim of the relator and the issuance of a warrant upon the State Treasurer for the payment thereof. Whether or not the entire amount as passed by the Legislature is appropriated, we find it unnecessary to decide, and, therefore, refrain from doing to.

SCOTT, C. J., concurs.

BEARD, JUSTICE (dissenting).

There are three ways and only three ways by which any bill can become law. (1) By being passed by the vote of a majority of the members elected to each house and the approval of the Governor. (2) By being passed by the Legislature over the Governor's veto. (3) By being passed by the Legislature and retained by the Governor without action thereon for the length of time prescribed in the constitution. On the other hand, no bill becomes a law which has been returned by the Governor with objections thereto to the house in which it originated, without further action by the Legislature; or when he has filed it in the office of the Secretary of State, with objections thereto, within fifteen days after the adjournment of the Legislature. It is the same identical bill, in the same language and containing the same terms and conditions, which, to become law, must be adopted by each house and be either expressly approved by the Governor, or to which he has waived his right to object by retaining it without action thereon beyond the time fixed by the constitution. It appears clear to my mind that no bill can become law to which the Governor has filed objections, whether those objections are sent to the house in which the bill originated, or are filed with the bill in the office of the Secretary (unless in the former case the bill is reconsidered and passed over the veto), any more than it can become law by the concurrence of one house and the Governor, without the assent or over the objection of the other house. In the present case it is conceded that the part or item of the general appropriation bill under consideration, making an appropriation for the office of State Geologist, is a "distinct item" within the meaning of the constitution, and as such could be vetoed by the Governor without disturbing the other items of appropriation embraced in the bill. And I think it must also be conceded that the Governor has the power to veto a bill appropriating money, or a distinct item of the general appropriation bill, for the reason that in his judgment the amount appropriated is too large, as well as for any other reason.

We must then look to the action taken by the Governor on this item and determine its effect; and in so doing must consider what he wrote on the bill itself and what he said in his communication to the Secretary of State. In signing the general bill he expressly excepted certain "items or parts of items specially noted herewith as being disapproved," so that it cannot be said that in so signing the general bill he intended to, or did in fact, approve the excepted items, among which was the one here in question. On the margin opposite this item he wrote "$10,000 of item approved, $5,000 of item disapproved." There is but one construction, in my opinion, that can be put upon that language, and that is, that it was a disapproval of the item as it was written and passed by the Legislature. In his communication accompanying the bill he says: "I approve so much of this item as appropriates $10,000, and withhold my approval from $5,000, leaving the appropriation $10,000." That was also clearly a disapproval of the item as written and passed by the Legislature, and a positive objection to the item becoming law in form and substance as it was presented to him and to which both houses had agreed. The reason for the objection and why he would not permit it to become law was that the amount appropriated was, in his judgment, too large—a good and valid objection if standing alone. But how did the statement that it was $5,000 too much lessen or remove the force of the objection to the item as presented to him? It is true, he undertook to approve or make an appropriation of $10,000; but such a bill never passed either house. In this instance the amount of the appropriation was the principal question for consideration by the Legislature. The office was created by the constitution and the salary of the officer had been fixed by law, so that the amount to be appropriated for the contingent expenses of the office was the chief matter to be determined and fixed in the item. If any other amount either greater or less than $15,000 was considered at any time during the pendency of the bill in either house it was not agreed to; but $15,000 was the

amount that received the vote of a majority of the members elected to each house. No other amount ever received such vote, and could not, therefore, become law under the plain provisions of Section 25, Article III, of the constitution, which provides, "No bill shall become a law, except by a vote of a majority of all the members elected to each house," etc. And in Section 1 of the same article it is written, "The legislative power shall be vested in a Senate and House of Representatives," etc. These measures the people of the state in their sovereign capacity adopted and declared to be the supreme law of the state, binding upon and to be observed and obeyed by all and by every department of the state government. The constitution is a limitation upon the powers of the Legislature; but the authority therein given to the Governor to veto an act of the Legislature is a grant of power. It is negative, not affirmative, destructive, not creative. He can by virtue of the power so granted prevent an act of the Legislature becoming law except by the vote of an increased majority of each house; but he cannot alter the language or terms of an act and make that law to which the Legislature has not given its assent. He cannot make that conditional which the Legislature has declared shall be unconditional, or the converse. Either would be legislation by the Governor without the consent of the Legislature. Let us suppose that the general appropriation bill embracing the item in question had been passed and presented to the Governor more than three days (Sundays excepted) before its adjournment and he had returned a copy of this item to the house in which it originated with exactly the same indorsements thereon and the same objection contained in his communication transmitting it to the Secretary of State. Would it have become the law appropriating $10,000 or $15,000, or at all, without further action by the Legislature? I think not. The effect of the objection is the same in each case, and I am unable to discover any provision of the constitution to the contrary. As I understand it, a veto is an objection by the Governor to a bill as written and passed by the Legis-

lature becoming law, whatever his objection or the reasons therefor may be. As above stated, it is the bill as written and presented to him that is or is not to become law, and no other. If it is permissible for him to change the amount of an appropriation, why may he not by the same authority change the objects, terms or conditions of the bill and make it a valid enactment without further action by the Legislature? The provisions of Section 9, Article IV, of the constitution were evidently intended to and do give to the Governor exactly the same right, neither greater nor less, to object to any "distinct item" of the general appropriation bill that is granted to him by Section 8 of the same article with respect to a separate bill; and that is to approve it in its entirety or to object to it. The objection may go only to some condition or term contained in the bill which causes him to withhold his approval of it in its entirety; but whatever the objection may be, if made, it prevents the bill from becoming law until passed over the objection, or it is changed to conform to the wishes of the Governor by the Legislature—the only body empowered by the constitution to make or change the statute law. To construe the constitution as granting to the Governor the power to reduce the amount of an appropriation made by the Legislature and make it valid for the reduced amount, is to limit the powers of the Legislature to determining the purposes for which public funds shall be appropriated and fixing the maximum amount of such appropriations, leaving the amount to be fixed by the Governor, and thus substituting his judgment for that of the Legislature. In the present case the Governor objected to the appropriation as made by the Legislature because in his judgment it was too large. That, in my opinion, was an objection to the item *as it was written* becoming law, and constituted a veto of the item; and the attempt of the Governor to make an appropriation for a different amount without the consent of the Legislature was beyond his constitutional authority and void. With all due respect for the opinion of my associates, I am constrained to differ from them, and believe the writ should be denied.