A. B. ROBERTSON, Jr., as a citizen, taxpayer and qualified elector of Barbour County, Alabama, individually, and for all others similarly situated, Plaintiff,

v.

MacDonald GALLION, Attorney General of the State of Alabama, et al., Defendants.

Civ. A. No. 2646-N.

United States District Court
M. D. Alabama, N. D.

March 26, 1968.

Parker & Hoffmann, Montgomery, Ala., and A. B. Robertson, Jr., Clayton, Ala., for plaintiff.

MacDonald Gallion, Atty. Gen., and Gordon Madison, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendant MacDonald Gallion.

Robert S. Vance, pro se.

J. Gorman Houston, Jr., Eufaula, Ala., for Probate Judge George E. Little and for Harry Nelson, member, Barbour County Board of Revenue.

Albert F. Simpson, Jr., Eufaula, Ala., for William S. Berrey, Chairman, Barbour County Republican Executive Committee.

Gray, Seay, Langford & Pryor, Montgomery, Ala., for applicants for leave to intervene as parties plaintiff.

### ORDER

JOHNSON, Chief Judge.

This cause is now submitted upon the following motions:

(1) Motion to dismiss filed herein on February 21, 1968, by MacDonald Gallion as Attorney General of the State of Alabama;

(2) Motion to dismiss filed herein on March 1, 1968, by Robert S. Vance, Chairman of the Alabama State Democratic Executive Committee;

(3) Motion to dismiss filed herein on March 11, 1968, by the defendant Harry Nelson;

(4) Motion to dismiss filed herein on March 11, 1968, by the defendant George E. Little;

(5) Motion of the plaintiff filed pursuant to Rule 15(a), seeking leave to amend by substituting Gerald Green in lieu of Thomas W. Parish as one of the defendants, and

(6) Motion of Lessie Mae McNabb and others, filed herein on March 13, 1968, seeking leave to intervene as parties plaintiff.

The plaintiff, A. B. Robertson, Jr., filed this class action alleging deprivation of his rights under the Fourteenth

Amendment to the Constitution of the United States and seeks to have declared unconstitutional an Alabama local act (Act No. 171, 1967 Regular Session of the Alabama Legislature), which redistricts Barbour County, Alabama, and sets up resident requirements for election to the Barbour County Board of Revenue. The real basis for plaintiff Robertson's complaint is that the Act invidiously discriminates against him in his right to vote for members of the Barbour County Board of Revenue and the weight to be accorded his vote for such member or members. No racial allegations are made in the plaintiff's case. However, the motion for leave to intervene is made on behalf of a class of Negro plaintiffs within Barbour County who seek to adopt Robertson's invidious discrimination allegations and assert a separate claim of discrimination based on race in violation of the Fifteenth Amendment to the Constitution of the United States.

Generally, the bases for the several motions to dismiss are that Robertson's complaint fails to state a claim upon which relief can be granted and that the complaint affirmatively reflects an absence of jurisdiction in this United States district court. After a careful examination of the pleadings, the arguments of counsel in support of and in opposition to the several motions, and the applicable law, this Court is to the conclusion that the motions to dismiss are due to be granted.

Plaintiff Robertson attacks the constitutionality of Act No. 171 on its face. It is critical to such an attack that the statute has not yet been applied. Furthermore, this plaintiff's contention that it will be futile to require him to wait for the application of what he contends to be a patently unconstitutional statute in order to attack its unconstitutionality is to no avail, since there is no background of the type of invidious discrimination that he contends is present in this statute. Thus, in order to prevail at this time, plaintiff Robertson must allege sufficient facts which if proved would show the statute to be facially unconstitutional. This he has not done and, from a fair reading of the statute, cannot do. The statute in question is simply not facially unconstitutional.

Act No. 171, 1967 Regular Session of the Alabama Legislature, provides for the election of five members to the Board of Revenue of Barbour County, Alabama, at large from the entire county, but it does require that the members be residents of certain "districts" within the county. The Supreme Court of the United States has repeatedly reaffirmed the proposition that such statutes on their face do not result in invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. In construing these motions, this Court assumes—as the Supreme Court of the United States apparently did in Dusch v. Davis, 387 U.S. 112, 116, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967)—that Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, (1964), controls to the extent that the Fourteenth Amendment requirements as set forth in Reynolds v. Sims are applicable on a county-city level. Plaintiff Robertson in his argument seeks to avoid the effect of such holdings by arguing that in Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965), the districts involved were substantially equal in population and that the court there pointed out that each case of alleged invidious discrimination must depend on its own facts. The rationale for the holding that an election system which requires political candidates to maintain residence in districts which may vary in population does not violate equal protection is discussed in *Fortson,* supra, and quoted in *Dusch,* supra, as follows:

"It is not accurate to treat a senator from a multi-district county as the representative of only that district within the county wherein he resides. The statute uses districts in multi-district counties merely as the basis of residence for candidates, not for voting or representation. Each district's

senator must be a resident of that district, but since his tenure depends upon the county-wide electorate he must be vigilant to serve the interests of all the people in the county, and not merely those of people in his home district; thus in fact he is the county's and not merely the district's senator."

Plaintiff's attempt to distinguish this authority on the theory that in *Fortson* the districts involved were substantially equal in population is without merit. In *Dusch* the court approved a similar plan where the districts involved ranged in population from 733 to 29,000.

Plaintiff also argues that each case must rest on its particular facts and that he is entitled to a hearing for the purpose of developing the facts in this case. In this connection, in *Dusch*, while approving the plan involved, the Supreme Court of the United States stated:

"In reversing the District Court we should emphasize that the equal-protection claim below was based upon an alleged infirmity that attaches to the statute on its face. Agreeing with appellees' contention that the multi-member constituency feature of the Georgia scheme was *per se* bad, the District Court entered the decree on summary judgment. We treat the question as presented in that context, and our opinion is not to be understood to say that in all instances or under all circumstances such a system as Georgia has will comport with the dictates of the Equal Protection Clause. It might well be that, designedly or otherwise, a multi-member constituency apportionment scheme, under the circumstances of a particular case, would operate to minimize or cancel out the voting strength of racial or political elements of the voting population. When this is demonstrated it will be time enough to consider whether the system still passes constitutional muster."

■ Thus it appears quite clearly that in these cases the question of the application of the statute under attack was presented. For this reason, this Court concludes that the applicable law forecloses attacks on the facial unconstitutionality of such statutes, but does not foreclose possible future attacks on such statutes upon the basis of their application. As stated earlier, the only attack plaintiff Robertson makes or could make is one challenging the constitutionality of Act No. 171, 1967 Regular Session of the Alabama Legislature, on its face. See also Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Davis v. Thomas County, Georgia, 380 F.2d 93 (5th Cir. 1967); Reed v. Mann, 237 F.Supp. 22 (N.D.Ga.1964).

■ In connection with the motion for leave to intervene now presented on behalf of a class of Negro citizens of Barbour County, Alabama, an initial question is posed, the answer to which will be dispositive of the motion. That question is: Assuming the original action is to be dismissed, could jurisdiction be vested in this court based upon a claim stated in a complaint in intervention? The attorneys representing those who seek to intervene argue that to dismiss the complaint in intervention, assuming it states a cause of action, would merely require them to "start over again." From a practical standpoint, this argument is appealing, but it has no legal basis; in fact, such a theory is contrary to the existing law. In Davis v. Jury Commission of Montgomery County, 261 F.Supp. 591 (M.D.Ala.1966), a class action was commenced in which a group of Negro plaintiffs sought leave to intervene. A motion to dismiss the action in chief was pending and was—as is the case now presented—submitted at the same time as the petition for leave to intervene. In *Davis*, the motions to dismiss the action in chief were granted. This Court then stated:

"There can be no question that the motion to intervene filed by certain Negro citizens on their own behalf and on behalf of all others similarly situ-

ated, if filed as an original complaint, would present a justiciable controversy which would require adjudication by this Court. See White v. Crook, 251 F.Supp. 401, 407 (M.D.Ala.1966), and the several cases therein cited. However, *it is well settled that an intervenor cannot create jurisdiction if it does not exist or is not otherwise proper as between the original parties.* Fuller v. Volk, 351 F.2d 323 (2d Cir. 1965) (citing numerous cases); Barron & Holtzoff, Federal Practice and Procedure (Wright ed.), § 593. Thus, the applicants for intervention cannot intervene in this action because, by virtue of this Court's dismissal of plaintiff's lawsuit, there is no justiciable action pending in which to intervene." 261 F.Supp. at 594, emphasis added.

It is clear therefore that the motion for leave to intervene in an action that cannot be maintained in this court is due to be denied.

Accordingly, it is the order, judgment and decree of this Court that the several motions to dismiss the complaint be and each is hereby granted. It is ordered that this action be and the same is hereby dismissed. This dismissal of plaintiff's action renders the Rule 15(a) motion to substitute moot.

It is further ordered that the motion of Lessie Mae McNabb and others filed herein on March 13, 1968, seeking leave to intervene as parties plaintiff in this action be and the same is hereby denied.

It is further ordered that the costs incurred in this proceeding be and the same are hereby taxed against the plaintiff.