STATE of Iowa ex rel. Richard C. TURN-
ER, Attorney General, Appellee,

v.

IOWA STATE HIGHWAY COMMISSION
and its commissioners, Derby Thompson,
Chairman, Kort Voorhees, Robert Barry,
William Gray and Bernard Mercer and Jo-
seph R. Coupal, Director of Highways, Ap-
pellants,

Gene A. Schlaegel, Clifton C. Lamborn and
Charles G. Mogged, Intervenors.

No. 54152.

Supreme Court of Iowa.

April 9, 1971.

Rehearing Denied June 14, 1971.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellants.

Richard C. Turner, Atty. Gen., Richard E. Haesemeyer, Sol. Gen., for appellee.

D. .C. Nolan, Iowa City, for Gene A. Schlaegel and Charles G. Mogged, intervenors.

Goodenow & Wright, Maquoketa, for Clifton C. Lamborn, intervenor.

REES, Justice.

This is an action in equity brought by the State of Iowa on the relation of Richard C. Turner, its Attorney General, to enjoin the Highway Commission of the State of Iowa, the individual members thereof, and the Director of Highways, from removing to other locations any of the resident engineers' offices established by the highway commission. The relator Attorney General asserted in his petition the removal of presently established resident engineers' offices would be in violation of section 5 of House File 823, chapter 30, First Session, Sixty-third General Assembly (1969).

Gene A. Schlaegel, a lawyer, realtor and taxpayer of Johnson County, Iowa, Clifton C. Lamborn, State Senator from the 19th District, resident of Maquoketa, and likewise a taxpayer, and Charles G. Mogged, then State Senator from the Second Senatorial District, filed petitions of intervention allying themselves with the plaintiff.

Plaintiff's petition was filed on September 26, 1969, and on the same date an order was entered by the Honorable Wade Clarke, Judge of the Ninth Judicial District, directing the issuance out of the office of the clerk of the district court of Polk County of a temporary writ of injunction, enjoining and restraining the defendants from removing the "permanent resident engineers' offices presently established by the Iowa State Highway Commission from their present location until further order of this Court." The defendant subsequently filed motions to dismiss plaintiff's petition, to dissolve the temporary injunction, or to modify the same, which came on for hearing on October 13, 1969, at which hearing evidence was taken, and on October 30, 1969 Judge Clarke overruled defendant's motion to dismiss, and ordered that the writ of injunction theretofore issued should continue to be in full force and effect for the purpose expressed in the writ. On the same date the court overruled motions of the defendant to dismiss the petitions of intervention. Following such rulings, further

pleadings were filed and the issues were made up and the cause thereafter came on for trial and hearing before the Honorable Gibson C. Holliday, a Judge of the Ninth Judicial district. Evidence was introduced and on January 12, 1970 there was filed the court's finding of fact, conclusions of law and decree in which the court ordered the temporary injunction theretofore issued on September 26, 1969 be made permanent, and that the defendants and each of them were permanently enjoined and restrained from removing the permanent resident engineers' offices presently established by the Iowa State Highway Commission from their present locations. The court retained jurisdiction for the purpose of resolving questions which might later arise regarding the transfer of personnel or equipment from any of said offices or moving any of said offices within a particular city or town. A motion for clarification of the injunction was later filed by the defendants and an order clarifying the same in minor respects was subsequently entered by the court.

House File 823 of the Acts of the Sixty-third General Assembly is, or was, an appropriation measure. It provided for appropriations from the primary road fund to the state highway commission for each year of the biennium beginning July 1, 1969 and ending June 30, 1971 of funds for administration, support services, planning, development, headquarters operations, field operations, additional equipment and replacement equipment. Section 5 of House File 823 is as follows,

"Sec. 5. The permanent resident engineers' offices presently established by the State Highway Commission shall not be moved from their locations; however, the commission may establish not more than two temporary resident engineers' offices within the state as needed."

After passage in both houses of the general assembly, the bill was submitted to the Governor for his approval or executive action. On June 20, 1969 the Governor transmitted to the Secretary of State the measure approving the same with the exception of item 5 above referred to. In the letter of transmittal to the Secretary of State, the Governor stated,

"House File 823 was approved June 20, 1969 with the following exception: "I am unable to approve item 5 designated as 'Sec. 5' in the Act * * *. I hereby disapprove this item as provided for in the Amendment to the Constitution of the State of Iowa adopted in 1968.

"My action is based on the following: The function of the Highway Commission is to construct and maintain roads and highways in the State of Iowa in the most efficient and effective manner possible.

"Restricting the location or relocation of resident engineers' offices will inhibit the commission's efforts to operate at maximum efficiency.

"Mr. Joseph R. Coupal, director of highways, estimates that this restriction could cost the State of Iowa an estimated $100,-000 during the biennium."

No endorsement of any kind was made on the bill itself when it was transmitted to the Secretary of State's office by the Governor. It was the obvious intention of the Governor to exercise his power of item veto as to section 5 of House File 823, acting under the power and authority to veto the measure in part afforded the Governor by the so-called "item veto" amendment to the Constitution by vote of the electorate of the state at the general election in November of 1968. The constitutional amendment in question is amendatory to Article 3, Section 16, Constitution, and provides,

"The governor may approve appropriation bills in whole or in part, and may disapprove any item of any appropriation bill; and the part appoved shall become a law. Any item of an appropriation bill disapproved by the governor shall be returned, with his objections, to the house in which it originated, or shall be deposited by him

in the office of the secretary of state in the case of an appropriation bill submitted to the governor for his approval during the last three days of a session of the General Assembly, and the procedure in each case shall be the same as provided for other bills. Any such item of an appropriation bill may be enacted into law notwithstanding the governor's objections, in the same manner as provided for other bills."

It was established the measure—House File 823—after passage by both houses of the General Assembly reached the Governor during the last three days of the first session of the Sixty-third General Assembly, and was then deposited with the Secretary of State with the letter from the Governor above referred to within 30 days of the adjournment of the Legislature.

The parties seem to be in agreement as to the exact issues before us, in that while they couch reference to the issues in different phraseology they seem to agree that the issues before the trial court made by motion, answer and reply, and which are raised by this appeal, are:

(1) Whether the court below had jurisdiction of the subject matter of an action instituted by the Attorney General of the state against the State Highway Commission, its commissioners and director, and of the intervenors on the side of the plaintiff;

(2) Whether the Governor constitutionally exercised his item veto power over section 5 of House File 823 of the Acts of the Sixty-third General Assembly; and

(3) Whether section 5 of House File 823 of the Acts of the 63rd G.A. is constitutional.

In addition to the foregoing issues which the parties agree are before us, the plaintiff asserts that an additional issue is presented by the appeal: (4) Whether even if section 5 had been effectively vetoed, there was any appropriation for moving any of the highway commission's permanent resident engineers' offices.

I. In their first proposition upon which they rely for reversal, the defendants assert the action is beyond the subject matter jurisdiction of the court for that (a) the court is deprived of jurisdiction by reason of section 679.19, Code 1966; (b) the same party is both plaintiff and defendant; (c) plaintiff lacks the power and authority as Attorney General to maintain the action; and (d) the interventions are insufficient to clothe the court with jurisdiction.

Section 679.19, Code 1966, provides:

"*679.19 Disputes between governmental agencies.* Any litigation between administrative departments, commissions or boards of the state government is prohibited. All disputes between said governmental agencies shall be submitted to a board of arbitration of three members to be composed of two members to be appointed by the departments involved in the dispute and a third member to be appointed by the governor. The decision of the board shall be final."

■ That the defendant highway commission is a commission of the State government seems to be unquestioned. The status of the Attorney General, however, with relation to section 679.19 is not so readily determined. The defendants contend the Attorney General's office is an administrative department, a part of the executive branch of state government, namely, the Department of Justice. On the other hand, the Attorney General argues that his office, or department, is not a part of the executive branch of government, but rather a part of the judicial department, and urges in support of his contention the fact a section of the Judicial Article of the Constitution, Article V, section 12, creates his office. Judge Clarke in his order overruling the defendant's motion to dissolve the temporary injunction, obviously by inadvertence, concluded as a matter of law the Attorney General is the "*head* of the Judicial Branch of the Government of Iowa". We however, conclude the Attorney General is not a judicial officer; that

irrespective of the fact his office is a constitutional one and is a creature of the Judicial Article of our organic document, that the posture of the Attorney General is always that of an advocate, never the stance of an arbiter. True it is, he is required by the statute defining his duties, Chapter 13, Code, to render opinions on questions of a public nature, however, this function is not "judicial", as the term is generally accepted.

It would be difficult for us to conclude that the office of attorney general falls within the proscription of § 679.19, Code, prohibiting litigation concerning disputes between administrative departments, commissions or boards of the state government. We recognize the words "executive" and "administrative" are interchangeable and synonymous. However, the attorney general is a constitutional officer and obviously, in our judgment, the Legislature did not contemplate in the enactment of § 679.19, Code, that executive officers should come within the proscription of the section. In addition, the matter before us now does not involve a controversy or dispute between the attorney general's office and the highway commission as such, but an involved question as to the manner and mode of the governor of a state exercising an item veto of a legislative measure. We therefore conclude the office of attorney general does not come within the purview and proscription of § 679.19 of the Code.

■ We have the benefit in this case of exhaustive and well prepared briefs and arguments on the part of both parties. The Attorney General insists that he and his office are clothed with common-law powers and that even absent specific statutory authority to maintain the suit, such common-law powers permit it. We however conclude this question has been answered in Cosson v. Bradshaw, 160 Iowa 296, 141 N.W. 1062, and in State ex rel. Fletcher v. Executive Council, 207 Iowa 923, 223 N.W. 737. In the Cosson case, the then Attorney General, George Cosson, filed in the district court of Marshall County his motion for permission to appear before the grand jury of that county and to make a presentment of evidence of the commission of certain crimes which in his motion he contended would not be made to the grand jury and therefore the interests of the State of Iowa would be jeopardized. Objections to the granting of leave to the Attorney General to appear and prosecute before the grand jury were filed by the county attorney. The Attorney General's motion was overruled and permission sought to appear before the grand jury was denied and certiorari was brought. At page 301 of the Iowa Report and page 1063 of 141 N.W., this court said,

> The duties and powers of the Attorney General are defined by statute, and we take it that the Legislature has given to him by the statute all the powers that in their judgment he ought to be permitted to exercise, and they imposed upon him all the duties which, in their judgment, should be imposed upon him as such officer. It is claimed, however, that he has large common-law powers which are not provided for in the statute, having their origin somewhere in the early dawn of civilization, but under the revision of 1860 (section 124), which defined the duties and powers of the then Attorney General, and which read as follows: 'The Attorney General shall appear for the state and prosecute and defend all suits and proceedings, civil and criminal, in which the state shall be a party or interested when requested to do so by the Governor,' or other state officers 'and shall prosecute and defend for the state all causes in the Supreme Court in which the state may be a party, or interested'— this court has held that he had no power to appear and prosecute a criminal case in any court except the Supreme Court, because no other power was given him by the statute."

State ex rel. Fletcher, Attorney General v. Executive Council of the State of Iowa, was an action in equity against the Execu-

tive Council and the members thereof and against the State Highway Commission and its members, to enjoin the enforcement of a legislative act comprised in Chapter 2 of the Extra Session of the 42nd G.A., commonly known as the Road Bond Act, on the ground that the act was unconstitutional and void. A motion to dismiss the petition predicated upon grounds of demurrer was filed, the substance of such pleading being the assertion of the constitutionality of the act. The Legislature had directed the Attorney General to institute an action to test the act's constitutionality. One Chrisinger, a resident of the State, and owner of taxable real estate and of an automobile and the payor of a license fee, joined with the Attorney General in the maintenance of the suit. In reversing the district court's order sustaining the motion to dismiss, this court (at page 738 of 223 N.W.) said,

"The procedure adopted herein cannot be approved. As presented, the case carries some of the aspects of a moot one. The legislative call upon the Attorney General to test the constitutionality of the act, by action brought by himself, overlooked the limitations upon the power of the judiciary, and quite ignored the legitimate scope of the powers of the Attorney General. By the very nature of his office, and by statute, he is the legal adviser, both of the Executive Council and of the General Assembly. To require him to maintain this action is to put him in a position which is repugnant to his other official duties. Nor has the judiciary of this state any power to render a merely declaratory judgment. We have jurisdiction to entertain only justiciable causes, prosecuted by a bona fide litigant, whose private rights are alleged to be invaded by an unconstitutional act. We recognize the fact that the legislative call was an act of deference to the judiciary as a co-ordinate department of the State, and in turn such deference is hereby fully reciprocated by the judicial department. The legislative good faith is manifest, and

likewise that of the Attorney General, who has performed the mandate upon him with sincere purpose and with signal ability. Nevertheless judicial duty requires us to say that he has no legal standing as a plaintiff in this case, and this we do without implying criticism upon him or upon the legislative body."

In our judgment, pronouncements of this court in Cosson and in Fletcher are determinative of this issue, and we reiterate the principle involved in both of said cases, and hold the Attorney General of this State is not clothed with common-law powers to maintain this suit.

II. Intervenors Schlaegel, Mogged and Lamborn are citizens and taxpayers of Iowa City, Fairfield and Maquoketa, respectively. They timely filed petitions to intervene on the side of plaintiff under Iowa Rule of Procedure 75. Intervenors allege grounds against the defendants similar to the allegations found in the Attorney General's petition.

Since Division I of our opinion concluded that the Attorney General had no standing to bring this action, we next consider the defendant's assertion that the intervenors also have no standing as plaintiffs. The basic contention of the defendants is since intervention contemplates an existing suit in a court of competent jurisdiction and because intervention is ancillary to the original cause of action, intervention should not be allowed to revive the nonexistent lawsuit of the Attorney General. Defendants argue that because the Attorney General had no standing to maintain this action, the court had no subject-matter jurisdiction, and as a consequence, the intervention of the intervenors could not bestow or revive subject-matter jurisdiction. Rule 75, R.C.P. provides,

"Any person interested in the subject matter of the litigation, or the success of either party to the action, or against both parties, may intervene at any time before trial begins by joining with plain-

tiff or defendant or claiming adversity to both."

Sufficient *interest*, not necessity, is the test for the right to intervene and neither the desire, advantage nor disadvantage of plaintiff or defendant is controlling. Price v. King, 255 Iowa 314, 319–320, 122 N.W.2d 318, 322. Intervention is remedial and should be liberally construed to the end that litigation may be reduced and more expeditiously determined. In re Town of Waconia, 248 Iowa 863, 869, 82 N.W.2d 762, 765; Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 530, 111 N.W.2d 317, 325; Edgington v. Nichols, 242 Iowa 1091, 49 N.W.2d 555, 556–557.

As noted above, the defendants contend that because the Attorney General has no standing, the court has no jurisdiction and because intervenors plead the same cause of action as the Attorney General they too should be found to have no basis for subject-matter jurisdiction.

Keeping in mind the policy of rule 75 set out above, that is, to provide remedial relief in order to expedite litigation, we find defendants' contentions do not apply to the specific issue before us in this case.

We found in Division I that the Attorney General in his official capacity had no standing to maintain this cause of action based on the Cosson and Fletcher cases, *supra*. The status of the intervenors is different. They are citizens and taxpayers and their status as plaintiffs is not subject to the same type of attack on the basis of standing as was the status of the Attorney General. Had the intervenors brought this action as original party plaintiffs in their capacities as citizens and taxpayers to restrain allegedly illegal use of funds, they would have stated a proper cause of action. Harding v. Bd. of Supervisors of Osceola County, 213 Iowa 560, 572, 237 N.W. 625, 631.

Defendants rely on three federal cases to support the proposition that intervenors have no standing in this lawsuit. Fuller v. Volk, 3 Cir., 351 F.2d 323, was a case in which the original plaintiffs, a group of citizens suing in their capacities as taxpayers, attempted to restrain implementation of a grade-school desegregation plan. The intervenors in the case were parents whose cause of action was bottomed upon the proposition the desegregation plan discriminated against them on the basis of racial classification. The federal court dismissed the original plaintiffs because of failure to show the requisite "more than $10,000" amount for federal jurisdiction. On appeal the original dismissal was upheld on the grounds that the plaintiffs-taxpayers could not aggregate their claims to make the jurisdictional amount. The appeals court remanded the intervenors' cause of action for further factual determination. In its discussion the court observed the intervenors had a good independent cause of action in that they alleged discrimination by race and that the intervenors did not allege injury as taxpayers. A remand was necessary because the appeals court was unable to tell from the record whether the intervenors had children directly affected by the desegregation plan. In a subsequent action the intervenors were allowed to continue in court upon a showing that their children were directly affected. See Fuller v. Volk, D.C., 250 F.Supp. 81. This case is factually distinguishable from the one at bar because the specific holding in Fuller v. Volk, 3 Cir., 351 F.2d 323, relating to the intervenors was a remand in order to get the factual uncertainty resolved. In the course of the discussion in Fuller v. Volk, *supra*, at 328, the court said, "However, a court has discretion to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor." At 351 F.2d 323, 329, the court continued, "This discretionary procedure is properly utilized in a case in which it appears that the intervenor has a separate and independent basis for jurisdiction and in which failure to adjudicate the claim will result only in unnecessary delay."

Robertson v. Gallion, D.C., 282 F.Supp. 157, cited by defendants, is also factually distinguishable. In that case, the original plaintiff brought an action alleging a county redistricting plan was invidiously discriminatory on its face and that it thereby deprived him of his right to vote. Intervenors alleged essentially the same cause of action and both plaintiffs and intervenors were dismissed. The basis of the dismissal in both instances was that the redistricting statute was not unconstitutional on its face and that no cause of action could be maintained prior to a showing of actual depreciation of voting rights. Thus there was no independent, good cause of action stated by the intervenors, a situation inconsistent with the case before us here.

Again, in United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893, both the original plaintiff and the intervenor were not qualified creditors under the special federal statute involved in that case. There was no independent ground for a good cause of action that could have been asserted by the intervenor because of the operation of the federal creditor statute on the original plaintiff.

The federal case, Atkins v. State Board of Education of North Carolina, 418 F.2d 874 (CA–4) is a case involving intervention which supports the language set out *supra* from Fuller v. Volk. In the Atkins case the plaintiff brought an action to require the Winston-Salem, North Carolina Board of Education to provide a racially integrated unitary school system. The plaintiff claimed status to maintain the action because he was a taxpayer, the grandparent of children attending public schools and a Negro. The district court found that the plaintiff's interest in the subject matter of the lawsuit was insufficient to establish standing. However, the plaintiff's daughter and son-in-law who were parents of children in the Winston-Salem public schools intervened. The court allowed the intervention and stated

at p. 876, "Ordinarily intervention cannot be used to revive a lawsuit, but a court may treat intervention as a separate action, especially when the intervenor has an independent basis for jurisdiction."

We therefore conclude that the intervenors in this case have standing to maintain their cause of action. Our conclusion is based on the policy set out in the Iowa cases interpreting rule 75, R.C.P. The issue of interpretation of the item veto is an important matter and to dismiss this action would not serve the interests of either intervenors or defendants. As has been pointed out, our policy on intervention is remedial in order to reduce and expedite litigation. To dismiss the intervention would be contrary to our law and its policy. Our holding allowing the intervenors to maintain standing is also based on their different status as taxpayers as compared to the Attorney General in his official capacity. While the causes of action stated by the Attorney General and the taxpayers-intervenors are similar, the grounds for considering their standing to maintain that cause of action are not similar. The Attorney General's cause of action is dismissed because our law, previously set out in Division I says that in his specific *capacity* he cannot maintain such an action. The intervenors as taxpayers have a different status than the Attorney General and that difference supports a holding that the intervenors are proper parties in this cause of action.

III. As a further ground requiring reversal, defendants contend section 5 of House File 823, Acts of the 63rd General Assembly, never became a part of the statutes because the Governor vetoed said section; that section 5 was a part of an appropriation bill subject to veto and was not a condition, proviso or restriction on the bill, and that the Governor's veto power was properly exercised.

Conversely, the plaintiff contends section 5 of House File 823 was a restriction, con-

dition or limitation upon an appropriation bill and as such was not within the Governor's power to disapprove, and that, therefore, section 5 could not be, and was not, constitutionally vetoed by the Governor.

When H.F. 823 of the Acts of the 63rd G.A., having been passed by both houses, reached the Governor's office following adjournment of the first session of the assembly for gubernatorial approval or veto, an opinion of the Attorney General and Solicitor General was requested by the Governor as to whether he could veto item 5 of H.F. 823, and was orally advised that in the opinion of the Attorney General section 5 was not a line item of an appropriation bill but was rather a condition of or limitation upon the appropriation and that an attempted veto of the item or section would be contrary to the meaning of Article 3, § 16, of the Constitution of Iowa as amended. No advice was requested as to the manner of exercising an item veto and none was volunteered by the plaintiff.

House File 823 is entitled "An Act to Appropriate From the Primary Road Fund to the State Highway Commission". Generally speaking, it provides for appropriations from the primary road fund to the State Highway Commission for each year of the biennium beginning July 1, 1969 and ending June 30, 1971 of certain amounts for administration, support services, planning development, headquarters operations, field operations, additional equipment, and replacement equipment, and provides generally that unless otherwise provided the primary road fund should be appropriated for highway construction. Section 5 of H.F. 823, provides,

"The permanent resident engineers' offices presently established by the State Highway Commission shall not be moved from their locations, however, the Commission may establish not more than two temporary resident engineers' offices within the State as needed."

The Highway Commission had asked the General Assembly for an appropriation of $80,000 to pay the cost of moving certain of the 48 offices maintained by it as resident engineers' offices to other towns and cities. No appropriation specifically for this purpose was covered by House File 823.

On June 20, 1969 the Governor returned the original bill, House File 823, as enacted by both houses of the Legislature to the Secretary of State with a letter over his signature, in which he advised that he was transmitting the bill approved by him with the exception of item 5, or section 5, above referred to. He made no endorsement or writing of any kind on the bill itself.

The item veto amendment to Article 3, § 16, of our Constitution has not heretofore come under our judicial scrutiny. Here again we are favored with exhaustive briefs and persuasive arguments by both parties to this appeal. Both plaintiff and defendants compare or contrast the item veto provision of our Constitution with similar provisions in the constitutions of sister jurisdictions.

Either by circumstance or design, our item veto amendment makes no reference to appropriations "of money" in its provisions which enable a governor to approve appropriation bills in whole or in part, and permits the disapproval of any "item" of an appropriation bill. The defendants call attention to the fact that the Minnesota and New York Constitutions contain provisions permitting item veto of "items of appropriation of money" as does the Constitution of New Jersey. Both plaintiff and defendants emphasize the distinction between the words "item" and "part" or "parts" as the same appear variously in the item veto provisions of our Constitution and of the constitutions of sister states. We are not persuaded there is any significant distinction between or among these terms, nor are we disposed to import to the word "item" any

technical meaning. Neither party to this appeal questions that House File 823 is an appropriation act. The inclusion of section 5 in the measure whether it be termed an "item" or "part" is nonetheless a section of the bill as enacted by the General Assembly.

We feel a comparison of section 5, which is set out in full above, with the foregoing section 4 is of more than passing interest. Section 4 provides,

"No moneys appropriated by this act shall be used for capital improvements, but may be used for overtime pay of employees involved in technical trades."

It should be noted section 5 places no prohibition against the use of any moneys appropriated by the act for the moving of permanent resident engineers' offices presently established by the defendant commission. Had such language as used in section 4 been employed in section 5 we are impelled to the view that section 5 would have in such case been a proviso or condition upon the expenditure of the funds appropriated, but lacking such phraseology it obviously is not.

When the voters of Iowa in 1968 approved and ratified the amendment to the State Constitution which permitted the State's chief executive power to disapprove any item of an appropriation bill, Iowa became the 43rd state to incorporate in its constitution an item veto provision. Prior to that time the Governor of Iowa had no power under the Iowa Constitution to veto any portion of a bill. We have observed above that the constitutional provision known as the "item veto amendment" has not before come to us for consideration, and we must therefore look to judicial pronouncements of the courts of other jurisdictions in determining the question now before us.

We must also look to the language of the item veto amendments of the other 42 states which have adopted them and the cases which have interpreted the phraseology employed in such constitutional provisions.

By the terms of the recent amendment to the Iowa Constitution, the power of the Governor is confined to the approval or disapproval of items within an appropriation bill and does not permit the "item veto" of any other measures. The Supreme Court of Texas in Fulmore v. Lane, 104 Tex. 499, 512, 140 S.W. 405, 412, said,

"Nowhere in the Constitution is the authority given the Governor to approve in part and disapprove in part a bill. The only additional authority to disapproving a bill in whole is that given to object to an item or items, where a bill contains several items of appropriation. It follows conclusively that where the veto power is attempted to be exercised to object to a paragraph or portion of a bill other than an item or items, or to language qualifying an appropriation or directing the method of its uses, he exceeds the constitutional authority vested in him, and his objection to such paragraph, or portion of a bill, or language qualifying an appropriation, or directing the method of its use, becomes noneffective."

Our determination must be as to whether or not section 5 of H.F. 823 is in truth and in fact an "item". We feel it obvious section 5 did not "qualify an appropriation" or "direct the method of its use" and is in no sense a condition, qualification or proviso which limits the expenditure of any of the funds appropriated by House File 823.

In theory at least the Governor of Iowa does not have to contend with so-called "riders" attached to appropriation bills submitted for his approval which seems to be a circumstance governors of other states have to cope with. The Iowa Constitution, Art. III, § 29, provides, "every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title." This area of the appeal before

us will be dealt with *infra,* but we wish to express our view of the result which might attend where a governor has exceeded his authority in attempting to veto a portion of a bill which is not an appropriation bill or a portion of an appropriation bill other than a so-called "item" of such a bill. In Iowa our Constitution does not require the Governor's affirmative approval of a bill before it becomes a law, but, conversely, does require the Governor's affirmative disapproval in exercising the veto power. It necessarily follows therefore that should the Governor of Iowa exceed his authority and attempt to disapprove an item in a non-appropriation bill, or to disapprove part of an appropriation bill which is not in and of itself an "item", the natural result would be that the bill as a whole would become law as though he had approved it or had failed to exercise the affirmative disapproval required by our Constitution.

The term "item" as used in the constitutional amendments of the several states is definitive of that portion of an appropriation bill which the Governor is empowered to sever from the bill by his disapproval. The courts have generally agreed that the Governor is limited to vetoing items specifically appropriating money or at least placing conditions, restrictions or provisos on the use thereof. In Commonwealth v. Dodson, 176 Va. 281, 290, 11 S.E.2d 120, 124, the term "item" as used in the Virginia State Constitution is said to be "something that may be taken out of a bill without affecting its other purposes and provisions. It is something which can be lifted bodily from it rather than cut out. No damage can be done to the surrounding legislative tissue, nor should any scar tissue result therefrom."

Both parties cite us to State ex rel. Wisconsin Telephone Co. v. Henry, 218 Wis. 302, 260 N.W. 486. In the Henry case, the plaintiff contended the Governor's disapproval of parts of a bill as originally passed by the legislature and his approval of the remaining parts thereof, was unauthorized under the Wisconsin item veto amendment to the constitution, because the constitutional grant of power to the Governor by that section to approve parts of an appropriation bill and to disapprove parts thereof did not grant power to him to approve the appropriation and disapprove a proviso or condition inseparably connected to the appropriation, nor to disapprove parts of an appropriation bill that are not an appropriation. At 260 N.W. 490 the court said,

"In passing upon those contentions we find it unnecessary to decide in this case whether the Governor is empowered to disapprove a proviso or condition in an appropriation bill which is inseparably connected with the appropriation because upon analyzing the terms of the bill in question we have concluded for reasons hereinafter stated that the parts which were disapproved by the Governor were not provisos or conditions which were inseparably connected to the appropriation. If they had been the decision in State ex rel. Teachers & Officers v. Holder, 76 Miss. 158, 23 So. 643, would afford support for the plaintiff's contention. However, in view of our conclusion that the parts objected to by the Governor were not provisos or conditions inseparably connected to the appropriation, there remains the plaintiffs contention that the authority granted under section 10, art. 5, Wis.Const., in respect to an appropriation bill, does not empower the Governor to disapprove parts thereof that are not an appropriation. That the bill is an appropriation bill within the meaning of that term, as used in section 10, art. 5, Wis.Const., is not questioned. On the other hand, the words used in the provisions of that section which are involved in this action, are so plain and unambiguous, insofar as the application thereof in the case at bar is concerned, that there is no occasion for any extended discussion here as to

the history or nature of the veto or partial veto power. Interesting and excellent discussions of those matters, as well as the pernicious practices and evils in connection with the enactment of legislation, which have resulted in constitutional provisions, under which the executive veto power was enlarged to include the right to a partial veto in some respect, will be found in Fairfield v. Foster, 25 Ariz. 146, 214 P. 319; Commonwealth ex rel. Elkin v. Barnett, 199 Pa. 161, 48 A. 976, 55 L.R.A. 882, 884; Wood v. Riley, 192 Cal. 293, 219 P. 966; Fergus v. Russel, 270 Ill. 304, 110 N.E. 130, Ann.Cas.1916B, 1120; State ex rel. Teachers & Officers v. Holder, supra; Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405, 1082; Mills v. Porter, 69 Mont. 325, 222 P. 428, 35 A.L.R. 592; State ex rel. Jamison v. Forsyth, 21 Wyo. 359, 133 P. 521; People ex rel. Churchyard v. Board of Councilmen (Super.Buff.), 20 N.Y.S. 51. It is true that in most of the states, which permit a partial veto, the language commonly used in constitutional provisions authorizes the exercise of such executive disapproval only as to one or more of the 'items' or 'any item of appropriation' of an appropriation bill embracing distinct items."

And, at page 492 of 260 N.W. Reporter, the Wisconsin court went on to say, in the Henry case,

"It may well be that section 10, art. 5, Wis.Const., was not intended to empower the Governor, in vetoing parts of an appropriation bill, to dissever or dismember a single piece of legislation which is not severable, or so as to leave merely provisions which are not a complete or fitting subject for a separate enactment by the Legislature. Although that may not have been intended, there is nothing in that provision which warrants the inference or conclusion that the Governor's power of partial veto was not intended to be as coextensive as the Legislature's power to join and enact separable pieces of legislation in an appropriation bill. As the Legislature can do that in this state, there are reasons why the Governor should have a coextensive power of partial veto, to enable him to pass, in the exercise of his quasi legislative function, on each separable piece of legislation or law on its own merits. That is not necessary in many states because they have constitutional provisions which prohibit the Legislature from passing a bill which contains more than one subject. Wisconsin, however, has no such prohibition except as to private and local bills (article 4, § 18, Wis.Const.). As far as general legislation is concerned, the Legislature may, if it pleases, unite as many subjects in one bill as it chooses. Therefore, in order to check or prevent the evil consequences of improper joinder, so far, at least, as appropriation bills are concerned, it may well have been deemed necessary, in the interest of good government, to confer upon the Governor, as was done by the amendment in 1930 of section 10, art. 5, Wis.Const., the right to pass independently on every separable piece of legislation in an appropriation bill."

An excellent and exhaustive treatise on the item veto amendment to the Iowa Constitution is found in Volume 18, Drake Law Review, at page 245. At page 250, the author was moved to observe,

"It would seem probable that should the Iowa Legislature attempt to coerce the Governor into approving a lump sum appropriation by combining purpose and amount, the court would interpret the term 'item' liberally to preserve the purpose of the item veto amendment."

The observation of the author of the Law Review article above referred to was indeed prophetic. We do adopt such an interpretation of the term "item", and conclude that section 5 of H.F. 823 was an item subject to gubernatorial item veto.

We further hold the veto by the Governor and the manner in which he exer-

cised the same, namely, by transmitting the bill to the Secretary of State with a separate letter indicating his disapproval of item 5 was a proper method of indicating his disapproval in vetoing section 5. We find no authority which would indicate such a procedure is not a proper one.

IV. As an additional and further ground justifying reversal, the defendants advance the proposition that section 5 of H.F. 823 is unconstitutional in any event; that the defendants have standing to challenge the constitutionality of it, irrespective of the fact that they are charged with violating the statute; that if sec. 5 of H.F. 823 is not a part of an appropriation bill it violates Art. III, § 29 of the Iowa Constitution; and that sec. 5 would create an unconstitutional diversion of the Primary Road Fund.

By way of refutation to the contentions of the defendants, the plaintiff asserts section 5 is not unconstitutionally vague, defective, indefinite or uncertain.

As we have hereinbefore concluded, section 5 of H.F. 823 is a part of an appropriation bill, we do not deem it necessary to belabor this proposition unduly.

We have often said the Constitution should be liberally construed so one Act may embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto, and that every reasonable doubt must be resolved in favor of constitutionality. Lee Enterprises, Inc. v. Iowa State Tax Commission (Iowa), 162 N.W.2d 730, 737, and cases therein cited; Long v. Board of Supervisors of Benton County, 258 Iowa 1278, 1283, 142 N.W.2d 378, 381; Independent School Dist. of Cedar Rapids v. Iowa Employment Security Comm., 237 Iowa 1301, 1313, 25 N.W.2d 491.

The legislature may have intended to make of section 5 of H.F. 823 a condition, limitation or proviso on the expenditure of funds but as drawn and enacted it in no way restricted the use of the appropriated funds for the purposes and uses referred to in section 5 of the Act. Had its purpose as a condition, restriction or proviso been accomplished by specific draftsmanship, as was section 4 of the same Act, then of course it could not have been said section 5 was not germane to the general subject matter of the bill itself.

A sub-proposition which might be deemed collateral to the proposition urged that section 5 of H.F. 823 is in any event unconstitutional is advanced by defendants in their argument that there are no "permanent" resident engineers' offices maintained by the Iowa Highway Commission. As our review here is de novo, we have attempted to interpret the record in this particular. We feel it fair to say the witness for the highway commission, the Director of Highways, Mr. Coupal, indicated that no resident engineer's office had been designated as permanent as opposed to any other office which had been designated as temporary. This evidence was not refuted. A reference, therefore, in section 5 of H.F. 823 to the removal of permanent engineers' offices in the absence of accepted guidelines identifying them would appear to be meaningless unless the reference to those "presently established" might be construed to identify the existing offices all as permanent offices. Such a construction we do not feel under the record made would be realistic.

We are not disposed to find section 5 of H.F. 823 unconstitutional for having embraced multiple subject matter in its context.

V. The last proposition for our attention here is that raised by the plaintiff that no funds were appropriated to defray the expense of moving resident engineers' offices. We again refer to the undisputed testimony of the Director of Highways to the effect that under the appropriation for the personnel department a fund was provided to which the commission would have resorted to defray the expense of moving employees. We feel

**154**

this contention on the part of the plaintiff is without merit.

The orders, judgments and decrees of the trial court continuing in force the temporary writ of injunction and ordering the temporary injunction be made permanent are therefore reversed.

Reversed.

All Justices concur, except BECKER and RAWLINGS, JJ., who concur specially.

BECKER, Justice (concurring specially).

I concur in the majority opinion on all points except the ruling in relation to the Attorney General's standing to sue. In my view, Code, 1971, section 13.2(2) provides statutory authorization for the Attorney General to institute an action of this type "when in his judgment, the interest of the State requires such action."

RAWLINGS, J., joins in this special concurrence.