Robert R. RUSH, State Senator and Member of the 68th General Assembly of Iowa, Appellant,

v.

Robert D. RAY, Governor, State of Iowa, Appellee.

No. 83–1191.

Supreme Court of Iowa.

Feb. 13, 1985.

James M. Redmond and Faith O'Reilly of Babich, Bennett & Nickerson, Des Moines, for appellant.

Edgar H. Bittle and Edward W. Remsburg of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for appellee.

SCHULTZ, Justice.

In this appeal a legislator challenges the legality of the Governor's action exercising his item veto power. The basic issue is whether use of the governor's item veto power to eliminate a provision in an appropriation bill which prohibits the expenditure or transfer of appropriated funds from one department of state government to another is proper. The trial court held that such a veto is proper. We conclude such a provision is a qualification or limitation on the appropriation, rather than an item, and reverse.

During the 68th session of the Iowa General Assembly, the legislature enacted five appropriation bills for specific purposes. The bills in question are senate files 471, 497 and 2241 and house files 764 and 2580. Each bill contains a provision that either provided "notwithstanding section eight point thirty-nine (8.39) of the Code, funds appropriated by this Act shall not be subject to transfer or expenditure for any purpose other than the purposes specified" or recited a phrase similar in language and content.

Governor Robert D. Ray exercised his item veto power to excise the quoted and similar phrases from each act. The legislature did not override the Governor's item vetoes. We find it unnecessary to set out details concerning each specific bill or give the Governor's message concerning the reasons for the individual vetoes. Our opinion concerning the wisdom of either the original enactments or the vetoes does not enter into our judicial evaluation of the legality of the Governor's action.

The constitutional provision which gives the governor item veto authority provides in pertinent part:

The governor may approve appropriation bills in whole or in part and may disapprove any item of an appropriation

bill; and the part approved shall become a law. Any item of an appropriation bill disapproved by the governor shall be returned, ... Any such item of an appropriation bill may be enacted into law notwithstanding the governor's objections, in the same manner as provided for other bills.

Iowa Const. art. III, § 16 (1857, amended 1968).

On September 18, 1980, Robert Rush, a state senator, filed an action in district court against the Governor challenging the vetoes. Earlier, on appeal, we reversed the dismissal of the action on mootness grounds because of its public importance. *Rush v. Ray*, 332 N.W.2d 325 (Iowa 1983). Following remand, the parties moved for summary judgment. The district court granted the Governor's motion and denied appellant's motion; this ruling is the subject of the appeal.

■ Appellant asserts that the vetoed portions of these five acts are provisos or limitations, not items; thus, they were not subject to the governor's item veto power. On the other hand, the Governor asserts that the language stricken from the five appropriation bills constituted distinct, severable "items" within the meaning of article III, section 16 of the Iowa Constitution, that could be removed from the appropriation bills by the use of the item veto.

We have twice passed on the legality of the governor's exercise of the item veto power. On each occasion, we discussed whether the vetoed portion of the legislative bill was a condition or qualification of the appropriation, not subject to veto, or an item, properly deleted. *Welden v. Ray*, 229 N.W.2d 706, 710 (Iowa 1975); *State ex rel. Turner v. Iowa State Highway Commission*, 186 N.W.2d 141, 151 (Iowa 1971). In these cases we have extensively discussed the history and phraseology of our constitutional item veto provision and decisions from other jurisdictions interpreting and construing similar language and provisions. We need not repeat these discussions at length, but consider only the general principles announced.

The problem presented in *Turner* arose when the legislature appropriated funds to the primary road fund, and the governor vetoed a portion of the bill that additionally prohibited removing certain established offices from their present location. 186 N.W.2d at 143. When this item veto was challenged, we upheld the veto. We established certain principles to be used in interpreting the term "item" and distinguished items, which are subject to veto, from provisos or conditions inseparably connected to an appropriation, which are not subject to veto. We approved another court's statement that an "item" is "something that may be taken out of a bill without affecting its other purposes and provisions. It is something that can be lifted bodily from it rather than cut out. No damage can be done to the surrounding legislative tissue, nor should any scar tissue result therefrom." *Id.* at 151 (quoting *Commonwealth v. Dodson*, 176 Va. 281, 290, 11 S.E.2d 120, 124 (1940)). While we did not provide a specific definition of those provisos or conditions which are not subject to veto, we did quote the following language: "It follows conclusively that where the veto power is attempted to be exercised to object to ... language qualifying an appropriation or directing the method of its uses, he exceeds the constitutional authority vested in him...." *Id.* 186 N.W.2d at 150 (quoting *Fulmore v. Lane*, 104 Tex. 499, 512, 140 S.W. 405, 412 (1911)). While we surmised that the legislature may have intended to make the challenged language a limitation or proviso on the expenditure of funds, we held the act as drawn and enacted did not restrict the use of the appropriated funds for the purposes and uses referred to in the deleted language. We held the deleted language was an item rather than a qualification.

When the governor's authority to exercise his item veto power was challenged in *Welden*, we reached a different result than in *Turner*, holding that the attempted vetoes by the governor were beyond the scope of his constitutional power. 229 N.W.2d at 715 (two justices dissenting).

The vetoed items in the appropriation bills provided limitations on how the money appropriated for each department was to be spent. Specifically, these provisions included limitations on the number of employees in a department, limitations on the percent of the appropriation that could be used for salaries, prohibition against construction of buildings, prohibition against spending beyond budget, and elimination of matching fund grants if the federal funds were discontinued—with the further provision that unused state matching funds would revert to the general fund. We held that these clauses were lawful qualifications upon the respective appropriations rather than separate, severable provisions.

In *Welden* we again approved the use of the severability test announced in *Turner*, 186 N.W.2d at 151, to determine whether language constitutes an item. *Welden*, 229 N.W.2d at 714. We further discussed and explained the nature of the governor's role in the separation of powers and the prohibition against using the veto to destroy the remaining legislative provision by altering the legislative intent. We quoted a law review article with approval as follows:

It is obvious that the item veto power does not contemplate striking out conditions and restrictions alone as items, for that would be affirmative legislation, whereas the governor's veto power is a strictly negative power, not a creative power.

*Id.* at 713 (quoting Note, *Item Veto Amendment to the Iowa Constitution*, 18 Drake L.Rev. 245, 249–50 (1969)). We also quoted a New Mexico ruling that stated:

The power of partial veto is the power to disapprove. This is a negative power, or a power to delete or destroy a part or item, and is not a positive power, or a power to alter, enlarge or increase the effect of the remaining parts or items.... Thus, a partial veto must be so exercised that it eliminates or destroys the whole of an item or part and does not distort the legislative intent, and in effect create legislation inconsistent with that enacted by the Legislature,

by the careful striking of words, phrases, clauses or sentences.

*Id.* at 711 (quoting *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 365, 524 P.2d 975, 981 (1974)). Additionally, we referred to language from a Virginia case as follows:

We think it plain that the veto power does not carry with it power to strike out conditions or restrictions. That would be legislation. Plainly, money devoted to one purpose can not be used for another, and it is equally plain that power to impose conditions before it can become available is legislation.

*Id.* at 712 (quoting *Commonwealth v. Dodson*, 176 Va. 281, 296, 11 S.E.2d 120, 127 (1940)). The message of these cases and others reviewed in *Welden* is that the governor's power is a negative one that does not allow him to legislate by striking qualifications in a manner which distorts legislative intent. Thus, he cannot strike a provision that would divert money appropriated by the legislature for one purpose so that it may be used for another. Finally, we held in *Welden* that the governor's veto of a legislatively-imposed qualification upon an appropriation must also include a veto of the appropriation. *Id.* at 713.

In the present case the trial court determined that the vetoed portion of each appropriation bill did not change the basic purpose of the legislation; thus, the provision is properly considered a severable item rather than a legislatively-imposed condition. We agree with appellant's contention that "the effect of this veto was to make money from the treasury available for purposes not authorized by the legislation as it was originally written, contrary to the clear intent of the legislature." The Governor has used the item veto power affirmatively to create funds not authorized by the legislature. The vetoed language created conditions, restricting use of the money to the stated purpose. It is not severable, because upon excision of this language, the rest of the legislation is affected. The appropriated money is no longer required to be used *only* for the stated purpose; it

could be used for other purposes. Thus, these are not items which are subject to veto.

This case is unlike *Turner* in which the deletion of directions concerning office changes had no effect on the appropriation of funds. We find it closer akin to *Welden* in which the governor had deleted provisions which dictated how and for what purposes the appropriated funds were to be expended. In the present case the legislature clearly limited the expenditure of the appropriated funds to specified purposes. The veto distorted the obvious legislative intent that the funds only be spent for the appropriated purposes and created additional ways the funds might be spent. This was use of the veto power to create rather than negate. We hold that the language vetoed constituted qualifications on the appropriations rather than separate items subject to veto.

We are not unmindful that the Governor maintains the stricken language merely "sought to override Iowa Code section 8.39, an independent subject of legislative concern that possessed only a figurative relationship with the subject of appropriation." It is claimed the effect of the stricken language was to accomplish a distinct legislative goal wholly unrelated to the underlying appropriation, or the recipient's use of the appropriated funds, and as such, the language constituted separate, severable items. We do not agree.

The purpose of the language was to limit and qualify the use of the funds, an appropriate legislative function. The stricken clauses, standing by themselves, would have no independent purpose if the governor had vetoed the appropriations. Such clauses only have purpose and effect when they stand in conjunction with the appropriations. The avoidance of section 8.39 was not the motivating purpose of these stricken sections. Rather, this avoidance was necessary to effectuate the language's main thrust, qualifying and restricting the use of the appropriations. Thus, the language "[n]otwithstanding the provisions of section 8.39" did not represent an independent legislative goal, but merely was used to facilitate the legislature's goal in designating the way the appropriations were to be spent.

In summary, we hold the language stricken was an outgrowth of the legislature's power to appropriate funds. "Inherent in the power to appropriate is the power to specify how the money shall be spent." *Welden,* 229 N.W.2d at 710. We construe the stricken language to qualify the appropriation by limiting its expenditure. We do not consider the vetoed language an item that is the proper subject of the governor's item veto power.

■ In the Governor's motion for summary judgment, he maintained the legislative action is an unconstitutional restriction since it attempts to prevent gubernatorial exercise of the transfer power previously delegated in section 8.39. The trial court did not reach this issue, and the Governor did not specifically address this issue on appeal. Although article III, section 1 of the Iowa Constitution provides for separation of powers and various constitutional provisions provide executive authority, we find no merit in these claims. We do not condone an invasion of the executive function. Section 8.39 which authorizes the comptroller, with the approval of the governor, to transfer funds from the appropriation of one department, institution, or agency to another is a limited and qualified delegation of a legislative power. An impingement on that authority, restricting its exercise against qualifications to appropriations, cannot be construed as a violation of an executive power. It did not invade or prevent the governor's exercise of his constitutional veto power. As we have discussed, the matters vetoed were qualifications rather than items. "The authorities hold that an attempted veto of a qualification on an appropriation is not within the scope of the item veto." *Welden,* 229 N.W.2d at 710. Thus, the executive power was not invaded.

■ Finally, the legislation was not an improper repeal of section 8.39 in violation of Iowa Code section 3.1. Section 3.1 pre-

scribes the procedure to "amend, revise, codify, or repeal a law"; however, we have held that the provisions of this statute are directory and non-compliance does not invalidate. *Solberg v. Davenport*, 211 Iowa 612, 624, 232 N.W. 477, 483 (1930). Regardless, the stricken language was not a direct or indirect attempt to repeal section 8.39. The legislature simply excepted section 8.39 from operation in these five instances in order to facilitate the legislative purpose of designating the expenditure of the specific appropriations.

We have not addressed, but have considered, all the arguments of the parties. We conclude that our ruling in *Welden* along with the reasons expressed here compel us to hold that the trial court erred in granting the Governor's motion for summary judgment. The trial court should have sustained appellant's motion and entered judgment declaring the five vetoes illegal.

REVERSED.

All Justices concur except REYNOLDSON, C.J., and HARRIS and McGIVERIN, JJ., who dissent.

HARRIS, Justice (dissenting).

The majority holding is a rejection of the definition of "item" which we established in *State ex rel. Turner v. Iowa State Highway Comm'n.*, 186 N.W.2d 141, 150–52 (Iowa 1971), and a far-flung expansion of our majority holding in *Welden v. Ray*, 229 N.W.2d 706 (Iowa 1975). The result at once deprives the executive branch of a proper item veto and the right to veto legislation that repeals the operation of an existing statute. I respectfully dissent.

As the majority points out, there is no provision in the federal constitution for an item veto. We hence turn to state authorities for guidance. They disclose that our definition in *Turner* is no aberration. Agreeing with most definitions of "item" we said the term includes more than mere line subjects and dollar amounts. 186 N.W.2d at 149–52.

The experience in other states shows that, at best, there tends to be a blurred line between an "item" (which can be vetoed from an appropriation bill) and a proviso or condition on how the funds are to be spent (which cannot). It does however seem clear that the line, no matter how blurred, is crossed when legislation (even if labeled a proviso or condition) is appended to an appropriation bill in violation of the single subject provision of a state constitution.

The cases recognize a difficulty faced by governors when presented with appropriation bills which have been infused with legislation, going beyond the appropriation, which impacts either on existing statutes or upon purely executive functions. Some governors are unprotected even by a single-subject constitutional provision. *See State ex rel. Wisconsin Telephone Co. v. Henry*, 218 Wis. 302, 314, 260 N.W. 486, 492 (1935). It is quite common to find provisions such as *Art III*, § 29 of the Iowa Constitution which provide that "every act shall embrace but one subject . . . ." Single subject provisions offer some protection but it is limited. If a provision is attached to an appropriation bill in violation of the single-subject provision the whole act could be challenged as void. *See Green v. City of Cascade*, 231 N.W.2d 882, 887 (Iowa 1975). But a governor is usually in a poor position to ask for an appropriation bill to be declared void. This would be the case when the government could not continue to function without the funds from the appropriation. Legislation attached by means of proviso or condition labels to crucial appropriation bills might thus become impervious to veto. The upshot was a liberal definition of an item, mentioned by the majority, which we adopted in *Turner*. We said: ". . . should the . . . [l]egislature attempt to coerce the [g]overnor into approving a lump sum appropriation by combining purposes and amount the court [will] interpret the term 'item' liberally to preserve the purpose of the item veto amendment." 186 N.W.2d at 152 (quoting Note, *Item Veto Amendment to the Iowa Constitution*, 18 Drake L.Rev. 245, 250 (1969)).

Moreover, in *Welden,* this court stated what it would do when faced with a legislative appropriation unneeded for the specific enactment; we said we would apply the "scar tissue" test:

We would have a different case if the clauses involved here came under the rule relating to separate, severable provisions under which appropriations were not dependent for passage by the legislature.

*Welden,* 229 N.W.2d at 714 (citing *Turner*).[1] The scar tissue test certainly did not originate in our *Turner* opinion. Again, it is a well established response by the courts to a legislature's temptation to append controversial bills to appropriation measures.

Plaintiffs no doubt think the scar tissue rule is an unwarranted expansion of the originally intended scope of an item veto, which they see as the mere authority to strike individual dollar amounts. But courts elsewhere commonly apply it. In addition to *Turner* and *Welden, see Brown v. Firestone,* 382 So.2d 654, 664–68 (Fla. 1980); *Henry v. Edwards,* 346 So.2d 153, 158 (La.1977); *Attorney General v. Administrative Justice,* 384 Mass. 511, 515–18, 427 N.E.2d 735, 738 (1981); *State ex rel. Sego v. Kirkpatrick,* 86 N.M. 359, 364–65, 524 P.2d 975, 985–86 (1974); *State ex rel. Link v. Olson,* 286 N.W.2d 262, 270–71 (N.D.1979); *State ex rel. Brown v. Ferguson,* 32 Ohio St.2d 245, 249–52, 291 N.E.2d 434, 438–39 (1972); *Elmhurst Convalescent Center Inc. v. Bates,* 46 Ohio App.2d 206, 209, 348 N.E.2d 151, 154 (1975); *Brault v. Holleman,* 217 Va. 441, 446–50, 230 S.E.2d 238, 243–44 (1976); *Commonwealth v. Dodson,* 176 Va. 281, 289–310, 11 S.E.2d 120, 123–32 (1940); *Fain v. Chapman,* 94 Wash.2d 684, 687–88, 619 P.2d 353, 355–56 (1980); *State ex rel. Kleczka v. Conta,* 82 Wis.2d 679, 705–08, 264 N.W.2d 539, 550 (1978); *State ex rel. Sundby v. Adamany,* 71 Wis.2d 118, 128–34, 237 N.W.2d 910, 917–18 (1976).

The majority recites, and seems to acknowledge the validity of, the "scar-tissue test", but does not follow it. Under the test the provisions in question here were proper subjects of item vetos. Each appropriation was earmarked to a department of government which could use the funds only for the purpose specified by the legislature. The vetoes here in no way modified the legislative plan of how the department could use the funds. The vetoed provisions related only to funds which might remain unused. The power of the governor to transfer unused funds under section 8.39, acting after notice to and "review and comment by" appropriate legislative chairpersons, has been statutorily provided for more than forty years. *See* Iowa Acts (49 G.A.) ch. 62, § 5 (1941). All branches of Iowa government have become quite used to it. It is, to put it in simple terms, the way our state government works.

If the legislature were to pass an act calling for the repeal or suspension of section 8.39 the act would be subject to an executive veto. Under the scar tissue rule the governor should not be robbed of this veto power by the simple process of attaching the repeal or suspension of this existing statute to an appropriation bill. This is a textbook example of why we and states elsewhere adopted the scar tissue rule. The trial court should be affirmed.

REYNOLDSON, C.J., and McGIVERIN, J., join this dissent.

---

1. In Turner we said an item was "something that may be taken out of a bill without affecting its other purposes and provisions. It is something which can be lifted bodily from it rather than cut out. No damage can be done to the surrounding legislative tissue, nor should any scar tissue result therefrom." 186 N.W.2d at 151 (quoting *Commonwealth v. Dodson,* 176 Va. 281, 290, 11 S.E.2d 120, 124 (1940)).